Scott HEREK, Plaintiff-Appellant,

v.

POLICE & FIRE COMMISSION VILLAGE OF MENOMONEE FALLS, Defendant-Respondent.

Court of Appeals

*No. 98–1927. Submitted on briefs March 8, 1999.—Decided April 28, 1999.*

(Also reported in 595 N.W.2d 113.)

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Scott L. Schroeder* of *Murphy, Paulson, Murphy & Schroeder, S.C.* of Racine.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Michael J. Morse* and *Timothy W. Feeley* of *von Briesen, Purtell & Roper, S.C.* of Milwaukee.

Before Snyder, P.J., Brown and Ziegler,[1] JJ.

[1] Circuit Judge Annette K. Ziegler is sitting by special assignment pursuant to the Judicial Exchange Program.

ZIEGLER, J. Scott Herek appeals from a circuit court order upholding a disciplinary decision of the Village of Menomonee Falls Police and Fire Commission (the Commission) to terminate his employment. The Village of Menomonee Falls Police Department (the Department) charged Herek with multiple violations of departmental rules and regulations including giving false responses to questions posed during an internal investigation. Herek contends that the Commission proceeded on an incorrect theory of law by refusing to suppress the false responses and that the Commission exceeded its jurisdiction by terminating his employment. We disagree and affirm the circuit court order.

## BACKGROUND

The facts underlying the issues on appeal are undisputed. Herek was employed by the City of Milwaukee Police Department from approximately February 1990 to June 1995. In June 1995, Herek began employment with the Village of Menomonee Falls Police Department. In December 1996, approximately three weeks after the expiration of his probationary period, Herek was assigned the investigation of a theft. The theft occurred at a private residence during a party held by a juvenile while his parents were not at home. During the course of the investigation, Herek interviewed certain juveniles who had attended the party. One parent filed a citizen complaint against Herek based on his conduct during these interviews.

On December 30, 1996, Captain Darick Ottow assigned Sergeant Eugene Bautch to investigate the complaint. During his investigation, Bautch conducted personal interviews and obtained affidavits from the juveniles involved in the investigation and their par-

ents. On February 5, 1997, Bautch and his supervisor, Lieutenant Rick Plumley, interviewed Herek. Herek was accompanied by Officers Mark Waters and William Parker of the Menomonee Falls Police Department Union and Robert Blumenberg, a union consultant from the Labor Association of Wisconsin. The purpose of the interview was to allow Herek to respond to the allegations of inappropriate conduct. Herek responded to the Department's questions and denied that the alleged inappropriate conduct took place.

At the close of his investigation, Bautch provided the Department with a written report stating his determination that Herek had violated departmental rules and regulations and recommending that charges be filed. Bautch's report was then reviewed by Ottow, a field training operations commander, to ensure that departmental policy was complied with and that the recommended disciplinary action was being applied in a uniform and fair manner. After reviewing the allegations filed by Bautch, Ottow recommended that charges be filed with the Commission and that Chief of Police Jack Pitrof request termination if the charges were substantiated.

Pitrof reviewed the documents relating to the investigation and held a predetermination hearing. According to Pitrof, a predetermination hearing is conducted by the chief of police prior to disciplinary action to allow the officer a chance to be heard before a final disciplinary decision is made. Based on the Department's investigation into Herek's conduct, Pitrof filed charges against Herek.

The Notice of Charges alleged that Herek violated six General Orders of the Department: (1) "Conduct Unbecoming an Officer" for using vulgarities during

interviews with the juveniles, (2) "Conformance to Laws" for disclosing juvenile records to other juveniles during the interviews, (3) "Dissemination of Information" for making disparaging remarks about a fellow officer and disclosing information regarding a separate investigation, (4) "Required Reports" for failing to note a statement by one juvenile implicating another juvenile in the theft, (5) "Truthfulness" for providing false information when questioned regarding the alleged conduct and (6) "*Miranda* Warnings" for failing to administer a *Miranda* warning to a suspect. The Department sought "suspension without pay or other disciplinary action deemed appropriate by the Commission."

Pursuant to § 62.13(5), STATS., the Commission held a hearing regarding the charges against Herek. Prior to the commencement of the hearing, Herek filed a motion to dismiss the untruthfulness charge based on the Department's failure to provide warnings under *Garrity v. New Jersey*, 385 U.S. 493 (1967), and *Oddsen v. Board of Fire & Police Commissioners*, 108 Wis. 2d 143, 321 N.W.2d 161 (1982). The Commission denied Herek's motion finding that *Oddsen* did not mandate the suppression of his statements based on the lack of *Garrity* warnings and that his statements had not been coerced, involuntary or given as a result of a denial of due process.

On July 22, 1997, after hearing approximately six days of testimony from approximately twenty-two witnesses, the Commission issued a decision and order concluding that there was just cause for discipline and ordering that Herek be removed from office effective immediately.

On July 30, 1997, Herek filed a petition for review of the Commission's decision pursuant to § 62.13(5)(i),

STATS., and a petition for writ of certiorari. As grounds for review under § 62.13(5)(i), Herek alleged that the Commission did not have just cause under § 62.13(5)(em) for the imposed discipline and that the Commission's decision to terminate his employment was unreasonable, arbitrary, capricious and not supported by the evidence. Herek raised this same claim in his petition for writ of certiorari. He additionally argued that the Commission erred when it denied his motion to suppress based on the Department's failure to provide him with *Garrity* warnings during his interview pursuant to *Oddsen*.[2]

The circuit court upheld the Commission's findings in a memorandum decision issued on May 29, 1998. With respect to each of the six charges, the court found that the Commission fairly and reasonably reached its determination of just cause. The court declined to disturb the Commission's penalty, stating, "[T]he Commission acted appropriately and considering all the evidence before it disagreed with Chief Pitrof in each and every instance on the necessity for a stronger penalty. . . . This Court is not allowed to substitute [its] judgment for that of the Commission." Finally, the court rejected Herek's contention that the Commission acted on an incorrect theory of law in fail-

---

[2] Herek raised three additional arguments before the circuit court on certiorari which he does not raise on appeal: (1) that the Commission erred when it denied his motion to dismiss based upon duplicate penalties for the same charges, (2) that the Commission erred when it denied his motion for discovery and inspection with respect to all criminal and juvenile records of the juveniles involved in the case and (3) that the Commission erred when it relied upon the officers' oath of office as a standard of conduct despite not charging him with a violation of the oath.

ing to suppress his statements pursuant to *Oddsen* based on the Department's failure to provide *Garrity* warnings. Herek appeals.

## DISCUSSION

### *Standard of Review*

Herek's appeal to this court is by writ of certiorari.[3] Pursuant to § 62.13(5)(i), STATS., the circuit court has already reviewed issues pertaining to the reasonableness of the Commission's actions and the sufficiency of evidence to support the Commission's actions. Therefore, our review is limited to whether the Commission kept within its jurisdiction and whether it proceeded on a correct theory of the law. *See State ex rel. Smits v. City of De Pere*, 104 Wis. 2d 26, 31–32, 310 N.W.2d 607, 609 (1981). These are questions of law which we review de novo.

### *Garrity and Oddsen*

Herek contends that *Garrity* and *Oddsen* create a bright-line rule which requires that an internal investigator provide warnings prior to questioning an officer. According to Herek, if the warnings are not provided, the answers to the internal investigator's questions must be suppressed at a disciplinary hear-

---

[3] We note that Herek filed both a statutory review pursuant to § 62.13(5), STATS., and a certiorari review before the circuit court. However, this court is limited to those issues brought under certiorari review. Pursuant to § 62.13(5)(i), if a circuit court sustains the commission's determination, the commission's decision "shall be final and conclusive." Thus, this court is without jurisdiction to review Herek's claims brought pursuant to § 62.13(5).

ing, regardless of truthfulness. Therefore, Herek argues that the Commission wrongly refused to grant his suppression motion. We begin our discussion with *Garrity*.

In *Garrity*, certain officers were questioned as part of an investigation into the alleged fixing of traffic tickets. *See Garrity*, 385 U.S. at 494. Before being questioned, they were warned that their statements could be used against them in any state criminal proceeding and that they had the privilege to refuse to answer if the disclosure would tend to incriminate them but that if they refused to answer they would be subject to removal from office. *See id*. The officers answered the questions and, because immunity had not been granted, some of their statements were used against them in subsequent criminal prosecutions. *See id*. at 495. The officers were convicted. They challenged their convictions on the basis that their statements had been coerced because if they had refused to answer they could have lost their positions with the police department. *See id*.

The officers appealed their convictions by certiorari to the United States Supreme Court. The Court identified the question presented in *Garrity* as "whether a State, contrary to the requirement of the Fourteenth Amendment, can use the threat of discharge to secure incriminatory evidence against an employee." *Id*. at 499. In concluding that the officers' statements were coerced, the Court stated:

> The choice given petitioners was either to forfeit their jobs or to incriminate themselves. The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent. That practice, like interrogation practices we reviewed in

> Miranda v. Arizona, [384 U.S. 436, 464–65 (1966),]
> is 'likely to exert such pressure upon an individual
> as to disable him [or her] from making a free and
> rational choice.' We think the statements were
> infected by the coercion inherent in this scheme of
> questioning and cannot be sustained as voluntary
> under our prior decisions.

*Id.* at 497–98 (footnote omitted). The Court reversed the convictions, holding that "the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office." *Id.* at 500.

The Wisconsin Supreme Court first applied the *Garrity* holding in *Oddsen.* There, a male and a female officer were discharged for violating the adultery statute. *See Oddsen,* 108 Wis. 2d at 145; 321 N.W.2d at 163. The discharges were based on statements given during an interrogation at police headquarters. *See id.* The officers appealed the discharge decision before the board of fire and police commissioners, the circuit court and the court of appeals.

Although several issues were presented to our supreme court, it found one issue dispositive—"that the confessions extracted from [the officers], as a matter of fact and law, were coerced, involuntary, the result of denial of due process, and contrary to fundamental principles of decency and fair play." *See id.* at 146, 321 N.W.2d at 164. The court further concluded that the statements were coerced and inadmissible as a matter of law because the officers were not given admonitions pursuant to *Garrity. See Oddsen,* 108 Wis. 2d at 165, 321 N.W.2d at 173.

The *Oddsen* court relied on the Seventh Circuit's holding in *Confederation of Police v. Conlisk*, 489 F.2d 891, 894 (7th Cir. 1973), that

> a public employer may discharge an employee for refusal to answer where the employer both asks specific questions relating to the employee's official duties and advises the employee of the consequences of his choice, i.e., that failure to answer will result in dismissal but that answers he gives and fruits thereof cannot be used against him in criminal proceedings.

*See Oddsen*, 108 Wis. 2d at 164, 321 N.W.2d at 172 (quoting *Conlisk*, 489 F.2d at 894).

In *Oddsen*, because the board's discharge decision was based on the coerced confessions, the court reversed the board's decision and ordered the officers reinstated. *See id.* at 146, 166, 321 N.W.2d at 164, 173. The court held that "[a]bsent the warnings spelled out in *Conlisk*, these coerced statements cannot be used." *See Oddsen*, 108 Wis. 2d at 164, 321 N.W.2d at 172. Herek relies on this language in support of his contention that *Garrity* protection is mandated when an officer is interviewed, regardless of the context of the questioning or the officer's response.

However, under the logic of the cases cited by Herek, what is proscribed as unconstitutional is to condition public employment upon a waiver of the privilege against self-incrimination. When duress is inherent in the "choice" given, the individual being questioned is deprived of the opportunity to make a free and reasoned decision. Such circumstances have been aptly characterized as ones that force a public employee to select "between the rock and the whirlpool." *See Garrity*, 385 U.S. at 498.

It appears that the facts surrounding the statements drive these cases. The courts look at the "totality of the circumstances." For example, in *Oddsen*, the court spent a significant amount of time discussing the underlying facts surrounding the circumstances in which the statements were given. Also, in *Oddsen*, the officers gave self-incriminating statements. In the other cases cited by Herek, the officer was punished for either invoking his or her right to remain silent or for giving truthful and self-incriminating statements. Here, Herek did not refuse to answer the Department's questions nor did he make truthful, self-incriminating statements. Instead, Herek lied.

Nonetheless, Herek urges this court to adopt a bright-line rule and suggests that any statement made, regardless of its truthfulness, ought to be suppressed if the maker of the statement is not given *Garrity* protection. In support of a bright-line rule, Herek tries to align *Garrity* with the logic that surrounds *Miranda* and suggests that a litany of *Garrity* rights must be given, much like *Miranda* warnings.[4] Herek also suggests that certain occupational threats made by superior officers to a police officer or even subjective impressions of the person being questioned should trigger a per se and prophylactic rule which would exclude and automatically trump the admissibility of those statements.[5] In the same vein, Herek argues that the

---

[4] Clearly, if *Miranda v. Arizona*, 384 U.S. 436 (1966), is violated, an accused's statement is suppressed regardless of its truthfulness.

[5] Herek's argument relating to the suppression of coerced statements under *Garrity v. New Jersey*, 385 U.S. 493 (1967), at times confuses concepts of voluntariness and the "Hobson's choice" inherent in a *Garrity* situation. We note that *Martin v. State*, 686 A.2d 1130 (Md. Ct. Spec. App. 1996), provides a

general test of voluntariness and the surrounding facts and circumstances ought to be irrelevant. Herek's argument overlooks the fact that courts routinely consider the totality of the circumstances.

Although not dispositive in this case, we note that Herek was never threatened with discipline or prosecution and the circumstances surrounding his statement are devoid of any express or implied threats. There is nothing in the record to indicate that Herek's statement was anything but voluntary and completely free of any fear of occupational reprisal or criminal sanction. Nevertheless, we need not examine these issues further because Herek was not terminated or prosecuted for refusing to respond to questions or for giving a truthful, self-incriminating statement. Rather, Herek gave false statements and it is on that basis that this case is distinguishable from *Garrity* and *Oddsen*.

### Herek's Statement

It is undisputed that Herek made false statements during the Department's interview. He now seeks to suppress those statements, which were the basis for the charge of untruthfulness, under the cloak of *Garrity* and *Oddsen*. However, we know of no case law which extends *Garrity* immunity to false statements made during the course of a disciplinary investigation. Indeed, the case law is to the contrary. For reasons discussed below, we deem dispositive the fact that Herek gave false statements during the interview.

In *United States v. Devitt*, 499 F.2d 135, 137 (7th Cir. 1974), an officer allegedly extorted money from tavern owners while acting as a Chicago police officer.

thorough and well-reasoned discussion regarding the interplay between *Garrity* and various constitutional rights.

The officer denied the allegations before a grand jury. The officer was subsequently indicted and convicted for having made false statements before a grand jury. *See id.* at 136. As a ground for challenging his conviction, the officer argued that, pursuant to *Conlisk,* his testimony was coerced because it was made under threat of discharge if he refused to testify. *See Devitt,* 499 F.2d at 141. Because his testimony was the sole basis for the false statements charge, he argued his conviction should be reversed. *See id.* at 142.

In *Devitt,* the Seventh Circuit held that *Garrity* immunity does not extend to false statements made while testifying under oath before a grand jury even when the statements, if true, would have been otherwise entitled to immunity. The court stated, "*Garrity* and its progeny do not proscribe the use, in a criminal prosecution . . . of a defendant's allegedly perjurious statements, even if obtained under circumstances such as those of the instant case." *See Devitt,* 499 F.2d at 142.

The *Devitt* court's holding was applied recently in *United States v. Veal,* 153 F.3d 1233 (11th Cir. 1998), *petition for cert. filed,* No. 98–7878 (U.S. Jan. 29, 1999). As in the case now before this court, the officers in *Veal* sought the suppression of false statements made to state investigation officials at police headquarters. *See id.* at 1239. The officers were charged with obstruction of justice based on the false statements. The issue in *Veal* was whether *Garrity* protected false statements from subsequent prosecutions for such crimes as perjury and obstruction of justice. *See Veal,* 153 F.3d at 1239. The court began by noting that "the Supreme Court has been resolute in holding that the Fifth Amendment does not shield perjured or false statements." *Id.* at 1240.

While recognizing that the Supreme Court had not addressed false statements in the *Garrity* context, *see Veal*, 153 F.3d at 1241, the *Veal* court adopted the conclusion reached by other circuits: " *Garrity*-insulated statements regarding *past* events under investigation must be *truthful* to avoid *future* prosecution for such crimes as perjury and obstruction of justice. *Garrity* protection is not a license to lie or to commit perjury." *Veal*, 153 F.3d at 1243. The *Veal* court held:

> An accused may not abuse *Garrity* by committing a crime involving false statements and thereafter rely on *Garrity* to provide a safe haven by foreclosing any subsequent use of such statements in a prosecution for perjury, false statements, or obstruction of justice. . . .
> Although an accused may not be forced to choose between incriminating himself and losing his job under *Garrity*, neither *Garrity* nor the Fifth Amendment prohibits prosecution and punishment for false statements or other crimes committed while making *Garrity*-protected statements. Giving a false statement is an independent criminal act that occurs when the individual makes the false statement; it is separate from the events to which the statement relates, the matter being investigated.

*Veal*, 153 F.3d at 1243 (emphasis omitted).

██

We conclude, as did the courts in *Devitt* and *Veal*, that Herek's false statements were not protected by *Garrity*. Thus, the suppression issue was properly decided below.

## Herek's Termination

Herek next contends that the Commission's decision to terminate does not reasonably relate to the alleged violations and his record of service with the Department. The Commission contends that it acted on a correct theory of law and within its jurisdiction when it decided to terminate Herek's employment. We agree with the Commission.

As a threshold matter, we reject the Commission's contention that this issue falls within the statutory appeal process under § 62.13(5), STATS., and is therefore not reviewable by this court. As the Commission correctly points out, this court may not review whether the Commission's action was arbitrary, oppressive or unreasonable and represented its will and not its judgment, or whether the evidence was such that the Commission could reasonably arrive at its decision. *See State ex rel. Smits,* 104 Wis. 2d at 31–32, 310 N.W.2d at 609. Insofar as Herek's contentions relate to these factors, we will not address them. However, whether the Commission acted on a correct theory of law and whether it exceeded its jurisdiction are both issues properly before this court. *See id.*

We conclude that the Commission proceeded on a correct theory of law and did not exceed its jurisdiction by terminating Herek.

Herek's argument focuses on the progressive discipline policy employed by the Department. Herek contends that the Commission's decision to terminate is not in step with the progressive discipline policy because his only previous disciplinary problem arose after being late from lunch on one occasion.

Herek overlooks that the Commission is authorized to impose penalties pursuant to § 62.13(5)(e) and (em), STATS. Pursuant to para. (5)(e), once charges have

been filed, "[i]f the board determines that the charges are sustained, the accused, by order of the board, may be . . . removed, as the good of the service may require." Section 62.13(5)(e). In making its determination, the Commission is required under § 62.13(5)(em) to apply standards relating to the reasonableness of the Department's rules, actions and proposed discipline.

Here, the Commission applied the standards under § 62.13(5)(em), STATS. Before determining that "the good of the service require[d] removal in this instance," the Commission considered the seriousness of the alleged violations, the standard of conduct expected from a police officer and Herek's repeated acts of untruthfulness. Having complied with the law as set forth by § 62.13(5)(e) and (em), it was within the Commission's jurisdiction to make this determination and to remove Herek from his position with the Department.

## CONCLUSION

We conclude that the false statements made by Herek during the course of the Department's internal investigation are not entitled to *Garrity* immunity. *Garrity* does not protect against any subsequent actions which stem from Herek's decision to make false statements during the investigation. We further conclude that the Commission did not exceed its jurisdiction by terminating Herek. Accordingly, we affirm the circuit court's order upholding the Commission's disciplinary decision.

*By the Court.*—Order affirmed.