257 Wis.2d 539 (2002)
2002 WI App 217
652 N.W.2d 412
David R. UMHOEFER, Plaintiff-Appellant,
v.
POLICE AND FIRE COMMISSION OF the CITY OF MEQUON, Defendant-Respondent.[]
No. 01-3468.
Court of Appeals of Wisconsin.
Submitted on briefs June 20, 2002.
Decided July 31, 2002.
*542 On behalf of the plaintiff-appellant, the cause was submitted on the briefs of Andrew J. Phillips of Yakes, Bauer, Kindt & Phillips, S.C. of Oshkosh.
On behalf of the defendant-respondent, the cause was submitted on the brief of James R. Korom and Matthew A. Koch of von Briesen & Roper, S.C. of Milwaukee.
*543 Before Nettesheim, P.J., Brown and Snyder, JJ.
¶ 1. SNYDER, J.
David R. Umhoefer appeals from an order of the trial court dismissing his certiorari action challenging the Police and Fire Commission of the City of Mequon's (Commission's) decision to terminate his employment with the City of Mequon Police Department. Umhoefer argues that his due process rights were violated when the city's main witness, Umhoefer's ex-wife, was allowed to invoke the marital privilege against testifying. We agree that Umhoefer's due process rights were violated when his ex-wife invoked the marital privilege to avoid testifying. We reverse the order of the trial court and remand this matter to the Commission for proceedings consistent with this opinion.

FACTS
¶ 2. On October 16, 2000, Doyle Barker, chief of police for the city of Mequon, sent a letter to a member of the Commission alleging five general charges against Umhoefer: illegal wiretapping, criminal trespass to a dwelling, untruthfulness and two other charges later established not to be determination offenses.[1] Based upon these charges, Barker asked that the Commission remove Umhoefer from his employment with the police department.
¶ 3. The charges against Umhoefer were the result of an investigation triggered by statements from Umhoefer's ex-wife, Elizabeth Brennan, to the police *544 department. Umhoefer had filed for divorce from Brennan in June 1998; the divorce was final on September 17, 1999. On June 16, 2000, Brennan contacted the Mequon police department accusing Umhoefer of entering her property without permission. Her multiple statements to the police department also included allegations of illegal wiretapping.
¶ 4. In her statements to police, Brennan alleged that Umhoefer trespassed on her property on June 15, 2000. However, Brennan also alleged that in 1997 and 1998, while she and Umhoefer were still married, Umhoefer had tape-recorded numerous conversations she had with third parties. The charges in Barker's letter to the Commission were the result of Brennan's statements to the police.
¶ 5. The hearings on these charges took place over a six-month time period: November 20, 2000; March 14-15, 2001; March 19, 2001; April 9, 2001 and April 23, 2001. At the November 20, 2000 hearing, Brennan was the first witness called by the City; upon direct examination, Brennan declined to answer some of the City's questions, stating that she preferred "not to talk about things that happened while we were married." A discussion of spousal privilege, as set forth in WIS. STAT. § 905.05 (1999-2000),[2] ensued. Brennan still declined to answer the questions put forth by the City.
¶ 6. Umhoefer then moved to "suspend the hearing and go in front of a circuit court judge and have the circuit court judge decide whether she has to testify or not." The Commission met in a closed session for legal advice; when it returned, it decided to terminate the *545 proceedings to "get a judicial determination as to the extent and degree to which Ms. Brennan is required to testify in this proceeding."[3]
¶ 7. On March 14, 2001, the hearing reconvened. The Commission's legal counsel noted:
[O]n February 12, 2001, the Commission received a copy of a motion filed by Attorney Patrick Schott on behalf of Ms. Brennan seeking to suppress or  I'm sorry, let's get the exact wording here  a motion to preclude Elizabeth A. Brennan from testifying in the hearing setting forth reasons for the motion and argument in support of that motion.
The Commission denied Brennan's motion and she began testifying.
¶ 8. During her testimony, Brennan testified as to activities and statements made both prior and subsequent to her 1999 divorce. Brennan's attorney, who represented her at this hearing, also intermittently objected to some of the questions, arguing that the information requested fell within the scope of the marital privilege and he instructed Brennan not to answer. Umhoefer objected, arguing that Brennan's invocation of the marital privilege was selective and inconsistent:
She's just testified about a statement or lack of statement or communication to Mr. Umhoefer supposedly during the time they were married. We're talking two incidents in `97 and `98 and I just want to make sure, for the record, that I don't believe this witness, if she's going to raise this marital privilege and pick and choose what communication she's going to offer, that I believe *546 then she would be waiving that privilege and I want the record to reflect my position on this that she has waived it.
¶ 9. The City responded to Umhoefer:
It's my understanding of the spousal privilege that the person making the statement is the holder of the privilege and that the spouse who received the communication cannot disclose that, cannot waive that privilege to the other person. In this instance I have asked Ms. Brennan as to statements she made. She can waive the privilege as to her own statements. She is the holder of the privilege as to those statements.
The Commission appeared to agree with the City and Brennan continued to testify. Brennan continued to assert the marital privilege during her testimony; Umhoefer eventually asked the Commission if he could supply a list of questions, as an offer of proof, that he wanted answered as part of cross-examination.
¶ 10. The Commission issued its decision on May 5, 2001, concluding that there was substantial evidence to support the wiretapping and the criminal trespass charges. The Commission also concluded that Umhoefer was untruthful and that discharge from employment was an appropriate penalty.
¶ 11. On May 16, 2001, Umhoefer filed a WIS. STAT. § 62.13(5) direct appeal of the Commission's decision and a petition for certiorari review with the trial court. On November 7, 2001, the trial court addressed the § 62.13(5) direct appeal by sustaining the findings and the order of the Commission. The trial court did not address the petition for certiorari review in its decision. Umhoefer appeals.
*547 STANDARD OF REVIEW
[1-3]
¶ 12. The trial court's WIS. STAT. § 62.13(5) appeal decision is "final and conclusive" and we therefore have no jurisdiction to review that determination. Younglove v. City of Oak Creek Fire & Police Comm'n, 218 Wis. 2d 133, 136, 579 N.W.2d 294 (Ct. App. 1998). In general, the scope of our certiorari review is limited to whether the Commission (1) acted within its jurisdiction; (2) proceeded on a correct theory of law; (3) was arbitrary, oppressive or unreasonable; or (4) might have reasonably made the order or finding it made based on the evidence. Antisdel v. City of Oak Creek Police & Fire Comm'n, 2000 WI 35, ¶ 13, 234 Wis. 2d 154, 609 N.W.2d 464. However, when the trial court has disposed of a § 62.13(5) direct appeal, our certiorari review is further limited to whether the Commission kept within its jurisdiction and whether it proceeded on a correct theory of law.[4]Herek v. Police & Fire Comm'n Village of Menomonee Falls, 226 Wis. 2d 504, 510, 595 N.W.2d 113 (Ct. App. 1999). These are questions of law that we review de novo.

*548 DISCUSSION
¶ 13. Umhoefer contends that the Commission violated his rights of confrontation and due process by wrongly allowing Brennan's selective invocation of the marital privilege during her testimony. We construe Umhoefer's certiorari argument as addressing whether or not the Commission proceeded on a correct theory of law in obtaining Brennan's testimony, i.e., whether the Commission erred in allowing Brennan to selectively assert the marital privilege during her testimony against Umhoefer. We conclude that the Commission did not proceed on a correct theory of law in that it erroneously allowed Brennan to invoke the marital privilege contrary to Umhoefer's right to address the charges against him.
[4]
¶ 14. During both direct and cross-examination, Brennan invoked the marital privilege on her own behalf to avoid testifying about events and communications that occurred during the marriage. However, because the proceeding was one against her husband, the privilege was not hers to invoke.
¶ 15. WISCONSIN STAT. § 905.05 addresses the husband-wife privilege and states:
(1) GENERAL RULE OF PRIVILEGE. A person has a privilege to prevent the person's spouse or former spouse from testifying against the person as to any private communication by one to the other made during their marriage.
(2) WHO MAY CLAIM THE PRIVILEGE. The privilege may be claimed by the person or by the spouse on the person's behalf. The authority of the spouse to do so is presumed in the absence of evidence to the contrary.

*549 (3) EXCEPTIONS. There is no privilege under this rule:
(a) If both spouses or former spouses are parties to the action.
(b) In proceedings in which one spouse or former spouse is charged with a crime against the person or property of the other or of a child of either, or with a crime against the person or property of a 3rd person committed in the course of committing a crime against the other.
(c) In proceedings in which a spouse or former spouse is charged with a crime of pandering or prostitution.
(d) If one spouse or former spouse has acted as the agent of the other and the private communication relates to matters within the scope of the agency.
[5-7]
¶ 16. The marital privilege exists to encourage marital confidences and thereby preserve the marital relationship. See Muetze v. State, 73 Wis. 2d 117, 129, 243 N.W.2d 393 (1976). "Private communications," as provided in WIS. STAT. § 905.05(1), are not limited to oral or written exchanges "but may also include expressive acts which are intended to convey information of a privileged character." State v. Sabin, 79 Wis. 2d 302, 305, 255 N.W.2d 320 (1977) (citation omitted). "Communications" within the testimonial privilege of confidential communications between husband and wife include knowledge derived from the observations by one spouse of acts of the other spouse. Muetze, 73 Wis. 2d at 125 n.1.
*550 [8]
¶ 17. The marital privilege is no more than a rule of evidence, id. at 125, and WIS. STAT. § 905.05(1) states that the privilege belongs to the person against whom testimony is being offered. We agree with the trial court's statement in its WIS. STAT. § 62.13(5) decision that "it should be kept in mind that as the Commission noted, the only person on trial before the Commission was [Umhoefer]." While Umhoefer could invoke his privilege to prevent Brennan from testifying against him, Brennan could not invoke it to prevent her own testimony.[5]
¶ 18. One could argue that while the privilege was Umhoefer's to invoke, he then waived that privilege by continually asking Brennan questions regarding private communication that would have been privileged. However, Brennan repeatedly and erroneously invoked *551 the privilege on her own behalf which thus hindered Umhoefer's ability to effectively cross-examine her. [10, 11]
¶ 19. Again, on certiorari review, we must determine whether the Commission acted according to law; when used in conjunction with certiorari review, the phrase "acted according to law" includes the common law concepts of due process and fair play. State ex rel. Lomax v. Leik, 154 Wis. 2d 735, 740, 454 N.W.2d 18 (Ct. App. 1990). This means that Umhoefer must be provided a hearing applying minimal due process or fair play standards. See id. Umhoefer was entitled to the full panoply of due process protections, the minimum requirements of which include the opportunity to confront and cross-examine adverse witnesses. See State ex rel. DeLuca v. Common Council of City of Franklin, 72 Wis. 2d 672, 679, 242 N.W.2d 689 (1976). Because Brennan, the main witness against Umhoefer, erroneously refused to answer his questions on cross-examination, Umhoefer was denied the opportunity to confront and cross-examine her.
[12, 13]
¶ 20. Furthermore, even if we were to assume that Brennan could be the holder of the privilege, Brennan would have waived any privilege she might have had by giving statements to the police. WISCONSIN STAT. § 905.05 protects communications between spouses that are private, but a communication between spouses is not private where a third party has access to the same information. Kain v. State, 48 Wis. 2d 212, 216, 179 N.W.2d 777 (1970). The presence or hearing of a third person destroys the privileged nature of an otherwise privileged private communication between husband and wife. Sabin, 79 Wis. 2d at 306. Marital confidences would not be meaningful if a spouse could *552 decide to reveal the confidence to a third person and thereby destroy the protection of the privilege. Muetze, 73 Wis. 2d at 129. Brennan waived whatever privilege she may or may not have had by providing statements to the police.
[14]
¶ 21. A court sitting in certiorari review was once bound to either affirm or reverse on review. Lomax, 154 Wis. 2d at 741. Certiorari review now permits a remand for limited purposes. Id. Umhoefer's due process rights were denied when Brennan was erroneously allowed to assert the marital privilege. A full rehearing where Brennan testifies without asserting the marital privilege is necessary to rectify the violation of Umhoefer's due process rights.

CONCLUSION
¶ 22. Umhoefer's due process rights were violated when his ex-wife invoked the marital privilege. The Commission erroneously allowed Brennan to assert the marital privilege and refuse to testify when the privilege was Umhoefer's, not hers, to assert. We reverse the order of the trial court and remand this matter to the Commission for a full rehearing.
By the Court.Order reversed and cause remanded with directions.
¶ 23. NETTESHEIM, P.J. (concurring).
I whole-heartedly endorse the majority opinion. I write separately only to address a matter that the parties and the Police and Fire Commission might want to consider on remand.
¶ 24. During the proceedings before the Commission, Brennan's attorney was permitted to actively participate in the proceedings as an advocate counsel. I *553 fully respect Brennan's right to privately consult with her counsel regarding her role as a witness in these proceedings. But, in my judgment, that right did not entitle Brennan's counsel to actively engage in the proceedings by interposing objections and instructing Brennan as to how to respond to questions put to her by the attorneys for the Commission and Umhoefer. WISCONSIN STAT. § 62.13(5)(d) provides, in part, "The hearing on the charges shall be public, and both the accused and the complainant may be represented by an attorney . . . ." (Emphasis added.) This statute does not appear to countenance an advocacy role for the lawyer of a witness in such a proceeding.
¶ 25. This matter is not an issue on appeal because no one challenged the participation of Brennan's counsel in the proceedings before the Commission; nor was the issue raised in the review proceedings in the circuit court. However, on remand, the parties or the Commission may want to address this matter if a similar situation arises.
NOTES
[] Petition to review denied 10-21-02.
[1] In its Findings, Determination and Order, the Commission recognized five allegations and acknowledged that charges four and five would not have resulted in Umhoefer's termination.
[2] All references to the Wisconsin Statutes are to the 1999-2000 version unless otherwise noted.
[3] While this hearing was terminated in order to get a judicial determination, the record contains no evidence of any such determination.
[4] Umhoefer filed both a statutory review pursuant to WIS. STAT. § 62.13(5)(i) and a certiorari review before the circuit court. However, this court is limited to those issues brought under certiorari review. Pursuant to § 62.13(5)(i), if a circuit court sustains the commission's determination, the commission's decision "shall be final and conclusive." Thus, this court is without jurisdiction to review Umhoefer's claims brought pursuant to § 62.13(5). See Herek v. Police & Fire Comm'n Village of Menomonee Falls, 226 Wis. 2d 504, 510 n.3, 595 N.W.2d 113 (Ct. App. 1999).
[5] While WIS. STAT. § 905.05(2) allows the spouse to claim the privilege on the person's behalf, there has been no allegation whatsoever that Brennan was claiming the privilege on Umhoefer's behalf. Brennan even implicitly acknowledged that her invocation of the privilege was on her own behalf in the following exchange:

[COUNSEL FOR COMMISSION]: Can you explain why you would not want to  want to relate that information to this body after you had related it to the police department? What's  what's the difference? Why is it okay to talk about those things to the police department but not okay in your view to talk before the police and fire commission about it? .... [I]n terms of protecting your sense of wanting to protect the marriage or things that happened during the marriage, again you  you provided a statement to the police department about it, why not give the statement information to this body?
[BRENNAN]: Because I believe [Umhoefer's attorney] won't be so kind on  in cross-examination.