COURT OF APPEALS
DECISION
DATED AND FILED

July 7, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.   2019AP1095-CR**

Cir. Ct. Nos. 2018CV1190
2018CV1191
2018CV1433

**STATE OF WISCONSIN**

**IN COURT OF APPEALS
DISTRICT I**

BRIAN YOUNG AND BRADLEY JOHNSON,

　　PETITIONERS-APPELLANTS,

　V.

CITY OF MILWAUKEE BOARD OF FIRE AND
POLICE COMMISSIONERS,

　　RESPONDENT-RESPONDENT.

　　　　　APPEAL from an order of the circuit court for Milwaukee County:
WILLIAM SOSNAY, Judge. *Affirmed.*

　　　　　Before Blanchard, Dugan and Donald, JJ.

　　　　　**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1  PER CURIAM. Milwaukee Police Department officers Brian Young and Bradley Johnson ("the officers") appeal a circuit court certiorari review order affirming a decision of the City of Milwaukee Board of Fire and Police Commissioners ("the Board").  In a combined disciplinary proceeding for the two officers, the Board upheld their suspensions for fifteen working days without pay.  The Board determined that then Department Chief Edward Flynn had just cause to impose this discipline based on a fair and objective investigation showing that the officers had violated the Department's "citizen contact protocol" after they stopped a pedestrian.  The officers contend that the Board:  (1) violated their rights to due process, because the officers did not receive timely or adequate notice of the charge against them and because the charge against them is unconstitutionally vague; (2) exceeded its jurisdiction by issuing a written decision more than ten days after the hearing, contrary to a Board rule; and (3) erroneously rejected their argument that the discipline is barred by a doctrine of "employment double jeopardy."[1]  We disagree and affirm.

## BACKGROUND

¶2  The following is a brief summary of the Board's findings of fact regarding key events on the evening of April 20, 2016, aspects of which were recorded on Officer Johnson's body camera.  The officers were in uniform and

---

[1] Without reaching the underlying merits, we summarily reject one additional argument that the officers attempt to make.  In a discussion that is confusing in several respects, they appear to argue that the circuit court misapplied review standards in addressing the Board's determinations.  As the Board correctly points out, we review only the Board's decision; the officers cannot challenge the circuit court decision. *See Vidmar v. Milwaukee City Bd. of Fire Police Comm'rs*, 2016 WI App 93, ¶13, 372 Wis. 2d 701, 889 N.W.2d 443.  If the officers intend to make any coherent legal argument not resolved by *Vidmar*, we reject it as undeveloped. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals need not address undeveloped arguments).

assigned to patrol violent crime areas in an unmarked vehicle. Officers saw an African American man, J.B., walking toward the officers on West Concordia Avenue at around North Ninth Street.[2] When the officers saw him walking, J.B. was about seven feet from the curb. The officers drove up to J.B., who was by then standing in the road near a curb.

¶3 An officer directed J.B. to "come here" and "step forward;" J.B. said "don't touch me" and "for what?" Approximately eleven seconds after the officers opened their car doors to make contact with J.B., they placed their hands on him and tried to push his hands behind his back. However, J.B. kept his arms stiff as the officers continued to try to pin his arms behind his back. An officer asked if J.B. had "weed" (marijuana) or a gun, and J.B. denied possession of either.

¶4 While Officer Young had a hand on J.B.'s shoulder, Officer Johnson pointed a Taser at J.B. Officer Johnson yelled, "Get on your knees now, get on your fucking knees," and, seconds later, "Get on your knees now or I'm going to tase your ass," followed by, "Get down, get down on your fucking knees." The officers told J.B. to sit on the curb. J.B. refused. J.B. said that he had not done "shit."

¶5 Approximately thirty-three seconds after making direct contact with J.B., one officer told him that, in the words of the findings, "his offense is standing

---

[2] We use initials to identify this person, who is not a party to this litigation and has not to our knowledge invited public attention in any way.

in the roadway."[3]   An officer told J.B. to sit on the curb.   Eight seconds later, Officer Johnson told J.B. that he would be tased if he did not sit down, and J.B. again responded that he had done nothing wrong.

¶6      Within seconds, officers began to struggle with J.B. in an attempt to take him to the ground.   This struggle lasted for approximately eighteen seconds but did not result in J.B. going to the ground.

¶7      Officer Johnson again pointed the Taser at J.B. and yelled, "Get on the fucking ground."   J.B. refused to get on the ground and argued with the officers.   The officers tried again to take him to the ground and this time succeeded.   Approximately two minutes and twenty-eight seconds after getting out of their car, the officers handcuffed J.B., marking the end of the pertinent events of the officers' encounter with J.B.

¶8      In April 2017, Chief Flynn found that the officers in this incident failed to follow the Department's "citizen contact protocol."   More specifically, Chief Flynn determined that, by failing to adhere to Department policy on citizen contacts, the officers had violated the Department's Code of Conduct under Core Value 1.00 - Competence, which holds officers accountable for the quality of their performance, and Guiding Principle 1.05, which requires officers to be familiar with and abide by Department policies, procedures, and training.[4]   The citizen

---

[3] It is not necessarily a law violation to stand in a roadway.  However, WIS. STAT. § 346.29(2) (2017-18), provides:  "No person shall stand or loiter on any roadway other than in a safety zone if such act interferes with the lawful movement of traffic."

All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[4] Core Value 1.00 – Competence states:

(continued)

4

contact protocol at issue is described in subparts 1. and 2. of § 085.10.A. in the Department's Standard Operating Procedure.[5]

¶9     The Board issued a written decision following a hearing held over the course of two days in December 2017. Ten witnesses testified before the hearing examiner, including both officers. The Board detailed its findings of fact,

---

> We are prudent stewards of the public's grant of authority and resources. We are accountable for the quality of our performance and the standards of our conduct. We are exemplary leaders and exemplary followers.

Guiding Principle 1.05 states, "All department members shall be familiar with department policy, procedures and training and shall conduct themselves accordingly."

[5] Section 085.10.A. INTRODUCTION provides in pertinent part:

1. To the extent that safety considerations allow, police members will introduce themselves to all citizens they make contact with. A proper introduction will establish the identity of the police member, the authority of the police member, and the context surrounding the initiation of the contact. This provides the platform for the lawful actions or requests made by the police member during the contact. Introductions should be formulated so that they provide:

    a. The police member's name.

    b. The police member's rank or title.

    c. The police member's affiliation with the Milwaukee Police Department.

    d. The reason for the contact or stop.

2. The introduction shall occur as early in the contact as safety permits and will be given prior to the police member's request for identification or license and registration information from the citizen being contacted.

explained its analysis of each of the seven "just cause" standards set forth in WIS. STAT. § 62.50(17), and concluded that these standards "are satisfied."[6]

¶10    The Board's reasoning included the following. The officers "could reasonably be expected to know that unnecessarily escalating a pedestrian stop into an arrest requiring force and the drawing of a Taser would have an adverse effect on the person stopped and the public's perception of the department." The Board also determined that the officers failed "to even attempt to follow the

---

[6] WISCONSIN STAT. § 62.50, which applies to police and fire departments of "first class cities" such as Milwaukee, provides in subpart (17), as pertinent here:

(b) No police officer may be suspended … based on charges filed by the … chief … unless the board determines whether there is just cause, as described in this paragraph, to sustain the charges. In making its determination, the board shall apply the following standards, to the extent applicable:

1. Whether the subordinate could reasonably be expected to have had knowledge of the probable consequences of the alleged conduct.

2. Whether the rule or order that the subordinate allegedly violated is reasonable.

3. Whether the chief, before filing the charge against the subordinate, made a reasonable effort to discover whether the subordinate did in fact violate a rule or order.

4. Whether the effort described under subd. 3. was fair and objective.

5. Whether the chief discovered substantial evidence that the subordinate violated the rule or order as described in the charges filed against the subordinate.

6. Whether the chief is applying the rule or order fairly and without discrimination against the subordinate.

7. Whether the proposed discipline reasonably relates to the seriousness of the alleged violation and to the subordinate's record of service with the chief's department.

contact protocol," which "resulted in turning a pedestrian stop into an incident involving use of force, inappropriate language, and a Taser." The Board acknowledged that Chief Flynn had "considered the officers' records of service and found them to be positive." However, the Board concluded that the "harm done" by the officers in violating the citizen contact protocol "was great" and that "there was no reasonable suspicion to justify the tactics employed."

¶11    The officers challenged the disciplinary decisions in circuit court, as they are permitted to do, through their simultaneously filed appeals based on common law certiorari appeal and WIS. STAT. § 62.50. *See State ex rel. Heil v. Green Bay Police and Fire Comm'n*, 2002 WI App 228, ¶¶7-12, 256 Wis. 2d 1008, 652 N.W.2d 118 (discussing the two avenues available to appeal police and fire commission decisions). In a written decision addressing both the certiorari appeal and the statutory appeal, the circuit court affirmed the Board's decision, determining that "the Board kept within its jurisdiction, proceeded on a correct theory of law, and satisfied 'just cause' in its decision[.]" The officers appeal.[7]

## DISCUSSION

¶12    We address in turn the officers' due process and jurisdictional challenges and their argument that the Board decision violates "employment double jeopardy."

¶13    Our review is limited to two issues only: "whether the [Board] kept within its jurisdiction and whether it proceeded on … correct theor[ies] of the

---

[7] The officers present a single set of arguments on appeal, are represented by the same attorney, and were charged with participating together in the incident that gave rise to discipline. Neither party now suggests that any issue is individual to either officer.

law." *See* ***Herek v. Police & Fire Comm'n Vill. of Menomonee Falls***, 226 Wis. 2d 504, 510, 595 N.W.2d 113 (Ct. App. 1999). This is because under WIS. STAT. § 62.50(22), a board decision on a statutory appeal under § 62.50 is "final and conclusive" once sustained by the circuit court and, therefore, no portion of the officers' statutory appeal is before us. *See* ***Gentilli v. Board of Police and Fire Comm'rs of Madison***, 2004 WI 60, ¶14, 272 Wis. 2d 1, 680 N.W.2d 335. As to the circuit court's denial of the writ of certiorari, because issues "pertaining to the reasonableness of the [Board's] actions and the sufficiency of evidence to support the [Board's] actions" were resolved by the statutory appeals in circuit court, the officers may raise only the two issues of jurisdiction and correct theories of law. *See* ***Herek***, 226 Wis. 2d at 510. These are questions of law that we review de novo. ***Id.***

## I. DUE PROCESS

¶14 The officers make two due process arguments. First, they contend that the Board proceeded based on an incorrect theory of law regarding what was required in the way of pre-discipline notice to the officers regarding the nature of the charge. The Board's incorrect theory, according to the officers, was that the Board could sustain the discipline based on *different* charges than the one relied on by Chief Flynn in imposing discipline, and which the officers had notice of: alleged violations of the citizen contact protocol. Second, the officers contend that the set of rules on which they were disciplined are unconstitutionally vague.

### A.    Notice

¶15    The parties agree that the due process clause entitled the officers to pre-discipline notice of the charges against them, an explanation of the Department's evidence, and an opportunity to present their sides of the story.[8] The parties further agree that the only charge against the officers lodged by Chief Flynn that was properly before the Board was their alleged failures to follow the citizen contact protocol quoted above in note five of this opinion.  They also agree that the officers were given notice of this failure-to-follow-contact-protocol charge, an explanation of the Department's evidence on that charge, and an opportunity to present their sides of the story as to that charge.  Further, the Board does not dispute that it would violate the officers' right to notice if the Board's decision was actually predicated on different charges.

¶16    The only dispute is whether, as the Board contends, the Board affirmed the discipline based on the failure-to-follow-contact-protocol charge or, as the officers contend, the Board affirmed the discipline based on determinations that the officers did one or more of the following:  conducted an illegal stop, failed to exercise restraint, or failed to act in a courteous, lawful, and professional manner.  However, the officers fail to support this argument with pertinent record references and we agree with the Board that the record supports its position that it affirmed the discipline based on the failure-to-follow-contact-protocol charge.

---

[8] *See* **Cleveland Bd. of Educ. v. Loudermill**, 470 U.S. 532, 539-41, 546-48 (1985) (when a member of classified civil service may be disciplined only for cause under state law, the employee possesses a property right in continued employment that cannot be taken away except pursuant to constitutionally adequate procedures; a tenured public employee is entitled to oral or written notice of charges, an explanation of the employer's evidence, and an opportunity to present his or her side of story; all process that is due is provided by pretermination opportunity to respond, coupled with post-termination administrative procedures).

¶17    In its written decision the Board clearly and repeatedly makes the failure-to-follow-contact-protocol issue its focus.    The officers seize on a contextual reference made in the Board's decision, attempting to suggest that it represents a different charge, but the officers' interpretation is not reasonable.  The officers point to a reference in the Board's decision to a statement of Chief Flynn that "restraint is a core value of the department, that is, to use only the force necessary to fulfill the purpose of the task."  However, the citizen contact protocol, quoted in note five above, explains that providing name, rank, affiliation, and the reason for the contact or stop, "as early in the contact as safety permits," "provides the platform for the lawful actions or requests made by the police member during the contact."  The Board determined that the officers pulled up in an unmarked car, aggressively confronted J.B., and quickly put their hands on him, all without clearly identifying themselves and for reasons not explained to J.B., without a safety justification for doing so.  This conduct violated the policy goal expressed in the citizen contact protocol ("provides the platform for … lawful actions or requests") in a manner that demonstrated a lack of restraint.  There was not a separate charge of lack of restraint.  Many terms could have reasonably been used by the Department and the Board to characterize problems with this particular violation of the citizen contact protocol; lack of restraint is one apt characterization.

¶18    Separately, the officers inaccurately state that "the Board concluded in its written decision that the Officers conducted an illegal stop."  To the contrary, the Board stated, "The low level violation *that occasioned the stop* did not justify the officers' reaction as if it were a felony stop."  (Emphasis added.)

¶19    Otherwise, the officers merely cite to various arguments and references by counsel for then Chief Flynn that the officers assert were not

directed at the failure-to-follow-contact-protocol issue. But this strays from the issue here, which as the Board points out is whether the Board itself deprived the officers of their pre-discipline due process rights. It does not matter whether an advocate for the Chief might have made references or arguments that diverged from the sole charge that was properly before the Board.[9]

¶20 The officers fail to show that the Board proceeded based on an incorrect theory of law regarding notice.

### B. Vagueness

¶21 The officers appear to intend to make a two-part constitutional vagueness argument, although neither part is well developed. First, they assert that Core Value 1.00 and Guiding Principle 1.05 (both quoted above in note four) are "extremely vague and overbroad," and the officers appear to intend to suggest that from this we should conclude that the charge here is unconstitutionally vague. Second, they challenge the citizen contact protocol itself (quoted above in note five) as vague because it reads as mere "general guidance." As part of this argument, the officers point to language that we now emphasize in an introductory portion of § 085.10 of the Department's Standard Operating Procedure: "*While these contacts vary in nature, and each situation must be treated individually*, the goal of the department is that each contact be conducted in a courteous,

---

[9] The officers assert that it violated their due process rights for the hearing examiner to purportedly deny their counsel's request for an adjournment of the hearing based on a lack of notice. This adds nothing to the officers' other arguments for reasons that include the following. First, the cited transcript pages suggest that counsel did not pursue this objection after raising it in the midst of an argument. In other words, the hearing examiner could have reasonably determined that the officers were not pursuing this objection. Second, the officers do not now develop an argument that anything counsel said at the hearing supports the arguments they now make on the notice issue.

professional and lawful manner[,]" (emphasis added), and to the qualifier in § 085.10.A.1. that the protocol is to be followed "[t]o the extent that safety considerations allow." We reject these arguments.

¶22    Our supreme court has explained the following standards:

> The concept of vagueness may be generically described as resting on the "constitutional principle that procedural due process requires fair notice and proper standards for adjudication." The constitutional demand of procedural due process is not a requirement that the statute or ordinance be drafted with mathematical exactitude…. "Condemned to the use of words, we can never expect mathematical certainty from our language." Accordingly, the standard applied to examine a statute or ordinance has been expressed as follows: "A fair degree of definiteness is all that is required to uphold a statute or regulation, and a statute or regulation will not be voided merely by showing that the boundaries of the area of proscribed conduct are somewhat hazy." …:
>
> "'… Before a … rule may be invalidated for vagueness, there must appear some ambiguity or uncertainty in the gross outlines of the duty imposed or conduct prohibited such that one bent on obedience may not discern when the region of proscribed conduct is neared, or such that the trier of fact in ascertaining guilt or innocence is relegated to creating and applying its own standards of culpability rather than applying standards prescribed in the … rule.'"

*City of Milwaukee v. K.F.*, 145 Wis. 2d 24, 32-33, 426 N.W.2d 329 (1988) (second paragraph alterations in original) (citations omitted).

¶23    We reject the first part of the officers' vagueness argument for two reasons. First, it is undeveloped and does not even begin to represent a serious effort to apply the legal standards quoted above. Second, the officers fail to reply to the persuasive argument of the Board that the following are properly construed as "a single, coherent charge:" Core Value 1.00, Guiding Principle 1.05, and the citizen contact protocol itself. *See United Coop. v. Frontier FS Coop.*, 2007 WI

App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (failure to refute a proposition asserted in a response brief may be taken as a concession).

¶24 We reject the second part of the officers' vagueness argument because Section 085.10 of the Department's Standard Operating Procedure, including both its introductory portion and A.1. and 2., provide clear direction, not mere general guidance. The protocol specifically requires introductions of four unambiguous elements, to be made "as early in the contact as safety permits." These concepts are stated with clarity. As for the statement in the rule that "contacts vary in nature, and each situation must be treated individually," and that the protocol is to be followed "[t]o the extent that safety considerations allow," these are merely common-sense acknowledgment of the obvious. Enforcement of virtually any rule "requires the exercise of some degree of … judgment," and the conferral of enforcement discretion does not render a law impermissibly vague as long as that judgment is appropriately "confined." *See **Grayned v. City of Rockford***, 408 U.S. 104, 114 (1972) (upholding anti-noise ordinance against void-for-vagueness due process challenge because it required "demonstrated interference with school activities"). None of the language the officers point to creates, to quote the passage in **K.F.**, "'some ambiguity or uncertainty in the gross outlines of the duty imposed or conduct prohibited such that one bent on obedience may not discern when the region of proscribed conduct is neared.'" **K.F.**, 145 Wis. 2d at 33.

¶25 The officers fail to carry the burden of showing constitutional vagueness.

## II.    JURISDICTION

¶26    The officers briefly argue that the Board lost jurisdiction over this discipline case because its written decision was issued more than ten days after the oral decision of the hearing panel, contrary to FPC Rule XVI § 10(f), because the ten-day requirement in the rule is mandatory.[10]  We reject the officers' argument based on reasoning in the analogous case of ***Kruczek v. DWD***, 2005 WI App 12, 278 Wis. 2d 563, 692 N.W.2d 286 (administrative regulation requiring state agency to issue final order within thirty days in appeal from agency decision merely directory and not mandatory).

¶27    FPC Rule XVI § 10(f) provides, "A written decision will be signed by Board members who participated in the decision within ten (10) days after such decision is rendered and will be forwarded to each of the parties."  The decision here was issued more than forty days later.[11]

¶28    The officers argue that the rule is mandatory, but they fail to distinguish ***Kruczek*** in their reply brief.  We now summarize ***Kruczek***.

¶29    Kruczek appealed a judgment affirming his temporary debarment from work projects by the Department of Workforce Development.  ***Kruczek***, 278 Wis. 2d 563, ¶1.  Kruczek argued in pertinent part that DWD failed to abide by WIS. ADMIN. CODE § DWD 294.05(5)(b) (through May 2020), which provides that

---

[10] The officers assert that, even if the rule is directory, the Board lacked authority to issue the decision, but they fail to cite supporting authority and we ignore this assertion as an undeveloped argument.

[11] There is a separate Board rule that allows the Board to waive the ten-day rule, but the Board acknowledges that the requirements to invoke this waiver rule were not met here.

upon appeal of proposed findings of fact, the DWD's representative "'*shall* issue a findings of fact and final order within 30 calendar days of the receipt of the last argument filed.'" ***Kruczek***, 278 Wis. 2d 563, ¶¶1, 11 (emphasis added).[12] Kruczek contended that the thirty-day deadline was mandatory and the debarment was therefore invalid because it took DWD fifteen months to issue its determination. ***Id.***, ¶11. DWD maintained that the deadline was directory. ***Id.***

¶30 The ***Kruczek*** court noted a "general rule" regarding the use of the word "'shall'" in administrative regulations and statutes, which is that it "is presumed mandatory." ***Id.***, ¶13 (citation omitted). But the court also explained a more specific rule: "statutes specifying a time period in which an agency is to act are directory unless the statute denies the exercise of power after such time or the nature of the action or the statutory language shows the time was meant to be a limitation." ***Id.***, ¶14. Stepping back, the court observed that courts use four factors to determine whether the word "shall" is mandatory or directory: "(1) the objectives to be accomplished by the statute or regulation; (2) the statute's history; (3) consequences of an alternate interpretation; and (4) whether a penalty is imposed for the violation of the time limit." ***Id.***

¶31 After considering the code provision under these four factors, the ***Kruczek*** court determined that DWD's fifteen-month delay, while "not an

---

[12] The Board attempts to suggest that the word "will" in the rule here ("will be signed … within ten (10) days") is "more innocuous" (*i.e.*, less mandatory in tone) than the word "shall" used in the code provision at issue in ***Kruczek v. DWD***, 2005 WI App 12, 278 Wis. 2d 563, 692 N.W.2d 286, but we question that proposition. The routine comparison is between "shall" and "may," *see **id.***, ¶13, but in standard dictionary definitions "shall" is close in meaning to "will." *Will*, MERRIAM-WEBSTER.COM Dictionary, https://www.merriam-webster.com/dictionary/will, (last visited June 16, 2020) (third definition of "will" as an auxiliary verb: "used to express a command, exhortation, or injunction").

example of government efficiency," "is not fatal to DWD's debarment order." *Id.*, ¶¶15-23. Considerations included the following: the court could identify no language in the code suggesting that "immediate" compliance was required; DWD needed time to consider whether Kruczek actually merited debarment; debarment would be a temporary condition and the public interest in debarment "is effected at whatever time debarment begins"; "Kruczek shows no injury resulting from the fifteen-month delay;" and the code did not suggest "that DWD loses jurisdiction or competence to proceed in the event it fails to render a debarment decision in the time frame specified in the code." *Id.*, ¶¶18, 21-22.

¶32 The analysis in *Kruczek* is generally applicable here. In both cases, there is no suggestion in the agency rules at issue that it is an objective that the deadline be met, nor is any penalty expressed for noncompliance with the deadline. Like the DWD in *Kruczek*, the Board here has a strong interest in taking the time to make sure that suspension is expressed accurately in writing. Beyond that, as the Board points out, the legislature in WIS. STAT. § 62.50 has not set a deadline for the Board to record its decisions in writing, or even require that the Board itself set a deadline. *See* § 62.50(19) (providing only that the Board "shall decide" and "make the decision public"). The statutory appeal rights commence only after the findings "are filed with the secretary of the Board," not upon a verbal decision at hearing. *See* § 62.60(20).

¶33 The officers' primary argument in favor of interpreting "will" as mandatory is that "the Board's delay worked an injury on the Officers." The basis for this argument is Officer Young's testimony at the December 2017 hearing that he became eligible for promotion to detective in June 2017 and that he had not been promoted pending the outcome of the discipline proceeding. Based on this testimony, the officers argue that, at least as to Officer Young, delay in release of

the written decision "amounts to an injury to him, both monetarily and reputation-wise." However, the officers have no substantive reply to the Board's position that any injury to Officer Young would not have been the result of delay in release of the Board's written affirmation of and explanation of its oral decision against the officers on the day of the hearing. In other words, any injury resulted from the oral decision, and the timing of the written affirmation did not change the nature or effect of the injury.

¶34 The only reply by the officers to this argument is to suggest that delay in releasing the written decision necessarily postponed the ultimate resolution of this discipline (presumably through resolution of this appeal with this court and any potential review by our supreme court). But, given inevitable delays of at least some period resulting from litigation in the circuit court and, potentially, the appellate courts, this would be a tenuous basis to conclude that "will" is mandatory, given the reasoning in *Kruczek*. As the Board points out, this does not resemble the circumstances in *Karow v. Milwaukee Cty. Civ. Serv. Comm'n*, 82 Wis. 2d 565, 570-73, 263 N.W.2d 214 (1978) (interpreting "shall" as mandatory in WIS. STAT. § 63.10(2) (1975-76), which provided that the county civil service commission "shall appoint a time and place for the hearing of said charges [allegedly meriting an employee's demotion or dismissal], the time to be within 3 weeks after the filing of the same"). As the *Kruczek* court noted in distinguishing *Karow*, in *Karow* the commission's delay in holding any hearing at all to adjudicate the discipline beyond the three-week period forced Karow to continue on unpaid suspension for that time. *Kruczek*, 278 Wis. 2d 563, ¶20.[13] The

---

[13] Given our dispositive discussion on this topic in the text, we do not need to address the dispute between the parties regarding the Board's alternative argument that, even assuming a procedural error, any error was harmless.

(continued)

duration of the officers' unpaid suspensions here was not extended past the fifteen days imposed by Chief Flynn.

¶35    We conclude that the Board did not exceed its jurisdiction based on the timing of its written decision.

## III.    EMPLOYMENT DOUBLE JEOPARDY

¶36    The officers argue that the Board erroneously rejected their argument that the discipline is barred by a doctrine of "employment double jeopardy" because a supervisor counseled the officers following the incident.  The Board assumed without deciding that "imposition of a second discipline for the same conduct would be unfair and in violation of the fourth just cause standard," and rejected this argument based on the determination that the counseling session did not constitute discipline.  We reject the officers' argument based on the failure of the officers to provide Wisconsin authority of any kind establishing the existence of, and certainly not the specifics of, "employment double jeopardy."

¶37    We need not summarize facts surrounding the counseling session.  It is sufficient to resolve this issue that, as the circuit court aptly put it, the officers' argument "is based on arbitration decisions, Louisiana case law, and Wisconsin case law concerning double jeopardy in the criminal context."  The sole Wisconsin judicial opinion cited by the officers bears no resemblance to the situation here involving a police employment counseling session followed by discipline imposed

---

Separately, the officers wait until their reply brief to address *Kruczek* at all and then briefly assert, with little explanation, that *Kruczek* must be interpreted in light of *Koenig v. Pierce Cty. DHS*, 2016 WI App 23, 367 Wis. 2d 633, 877 N.W.2d 632.  We reject this argument as both undeveloped and tardy.  Further, we see no merit to the argument that the officers may be trying to make based on *Koenig*.

by a police chief and affirmed by the a police and fire commission. *See City of Oshkosh v. Winkler*, 206 Wis. 2d 538, 540-42, 557 N.W.2d 464 (Ct. App. 1996) (involving criminal prosecution following administrative discipline imposed on a college student). The scant legal authority offered by the officers raises more questions than it does answers.

¶38 We cannot reverse the Board for not following a legal standard that the officers have failed to show exists in Wisconsin.

## CONCLUSION

¶39 For all these reasons, we affirm the circuit court order affirming the Board's decision in all respects.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.