Leverna BRATCHER, Plaintiff-Respondent,

v.

HOUSING AUTHORITY of the CITY OF MILWAUKEE, Defendant-Appellant.†

Court of Appeals

*No. 2009AP2204. Submitted on briefs April 1, 2010.
—Decided June 8, 2010.*

2010 WI App 97

(Also reported in 787 N.W.2d 418.)

† Petition for Review denied 12-7-10.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Christopher P. Riordan* and *Douglas M. Raines* of *von Briesen & Roper, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *April A.G. Hartman* of *Legal Action of Wisconsin, Inc.* of Milwaukee.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. KESSLER, J. The Housing Authority of the City of Milwaukee appeals from an order granting certiorari to Leverna Bratcher and remanding her case

to the Housing Authority for another hearing on her application for rent assistance.[1] We affirm.

## BACKGROUND

¶ 2. Bratcher applied for admission to the federally funded Rent Assistance Program administered by the Housing Authority. By a form letter dated August 23, 2007, the Housing Authority advised Bratcher that it was denying her admission into the program, stating:

> At this time, program staff has decided to deny your admission based on the findings of your background check. The reason(s) for your denial is(are) listed below:
>
> **Specifically**
>
> 1. You were arrested for Battery on 9/14/04 by the Milwaukee Police Department.
>
> 2. You were found guilty of Disorderly Conduct on 10/7/03 in Milwaukee Municipal Court, Case No. 03132433.

(Bold and underlining in original.) The notice told

---

[1] The circuit court's order indicates that it is final and the parties have briefed it as such on appeal. However, upon closer examination, this court has determined that the 42 U.S.C. § 1983 claim that was also pled in the complaint was not resolved by the circuit court's order. Therefore, the order was not final. *See* Wis. Stat. § 808.03 (2007–08) ("A final judgment or final order is a judgment, order or disposition that *disposes of the entire matter in litigation as to one or more of the parties.*") (emphasis added). In the interest of judicial economy this court will on its own motion grant discretionary review. Accordingly, we treat the notice of appeal as a petition for leave to appeal and order the petition granted. *See Caldwell v. Percy*, 105 Wis. 2d 354, 357 n.3, 314 N.W.2d 135 (Ct. App. 1981); § 808.03(2).

All references to the Wisconsin Statutes are to the 2007–08 version unless otherwise noted.

Bratcher that she could request an Informal Review, but that "program staff will not be able to discuss the details of your background check over the phone" and that "[i]f you have any questions regarding this matter, please address them **only** during the time of your scheduled Informal Review." (Bold and underlining in original.) In the same form letter, Bratcher was told that at the Informal Review she was "responsible for providing any documentation, witness(es) or evidence that may clarify or support [her] case" and that she had the right to be represented by legal counsel. The letter concluded by stating: **"Your Informal Review is your only opportunity to dispute your denial .... Please do not contact staff to discuss your denial prior to your Review appointment."** (Underlining and bold in original.)

¶ 3. No documents pertaining to either the arrest (which did not lead to any charges) or the civil citation were attached to the notice. No summary of the facts underlying either the arrest or the civil citation was disclosed in the notice. The notice did not explain what rules, regulations or published standards of the rent assistance program were violated by the arrest and civil citation.

¶ 4. Bratcher requested the Informal Review. At that Informal Review, a person identified in the transcript only as "Rent Assistance"[2] stated that the arrest for battery was not prosecuted, then apparently read

---

[2] The record contains a transcript that was apparently made of an audio recording of the Informal Review. The "Hearing Officer" identifies herself at the beginning of the transcript. However, the person speaking on behalf of the Housing Authority is never identified other than as "Rent Assistance," which we assume is not, of course, the witness's name. We are troubled by this curious attempt to allow someone

187

aloud and/or paraphrased the police report related to the arrest. "Rent Assistance" did the same with the civil citation for disorderly conduct. Although "Rent Assistance" presented the information in police reports, nothing suggests that s/he was a witness to the underlying events. No witnesses testified on behalf of the Housing Authority.

¶ 5. The battery arrest was related to an argument Bratcher had with her sister, Tosha Bratcher. Tosha appeared at the Informal Hearing and told the Hearing Officer that although she and Bratcher had had an argument, Bratcher had not struck her, hit her or "[laid] a hand" on her.

¶ 6. With respect to the disorderly conduct citation, Bratcher expressed uncertainty as to what the four-year-old civil citation was about. She was eventually given a copy of the citation by "Rent Assistance." The Hearing Officer then apparently read the citation to Bratcher to refresh Bratcher's recollection of the events.

¶ 7. After hearing the citation read aloud, Bratcher said that she now recalled the incident. She then explained her view of the events involved in the disorderly conduct citation:

> I think I was coming from work and . . . I saw how . . . this young lady, she was 19 and my daughter at the time was 12 or 13. She had jumped on my daughter.
>
> . . . .
>
> . . . [The nineteen-year-old woman] [h]ad jumped on my daughter [who] at the time was like 12 or 13.

who appears to be an agency employee to participate in a hearing anonymously. We expect that, in the future, in whatever manner a record is made of the proceedings, the Housing Authority will insure that *all* participants in an Informal Review are identified by name in the record, barring some legally supported reason for allowing them to remain anonymous.

And I was very upset and out of control. So that's why they issued me the ticket for disorderly conduct. So I admit it today. Am I always like that? No. However, she was just an adult and I did tell them I only plead[ed] guilty[3] to slamming my hands on her door which I did and talking loud. But I didn't threaten her. But I told her as an adult she should have come to an adult rather than lash out at a child.

¶ 8. The Hearing Officer issued a two-page written decision upholding the denial of Bratcher's rent assistance application. The decision stated that based on Tosha's testimony that Bratcher had not hit her, "this incident will not be considered." However, the Hearing Officer concluded that "[d]ue to the disorderly conduct incident, the denial shall be upheld." With respect to that incident, the Hearing Officer stated:

> [Bratcher] admitted she had been angry about her daughter being "jumped" on by [the nineteen-year-old neighbor] but did not make threats etc.
>
> It is understandable that [Bratcher] was upset about her daughter; however, by the time she got home, the fight was over, the police were there and she could see her daughter was unhurt. While in the presence of police, applicant made threats, uttered profanities, banged on the door and caused a crowd to gather. The incident also happened near her residence and involved a neighbor. *This is the type of behavior that the Rent Assistance Program tries to screen out.*

(Emphasis added.)

¶ 9. Bratcher sought certiorari review in the circuit court, and she also asserted a claim under 42 U.S.C. § 1983 (2006). The circuit court considered Bratcher's

---

[3] Although Bratcher said she pled guilty, the record indicates she pled no-contest to the municipal citation and was found guilty.

request for certiorari review.[4] In a written decision, the circuit court granted the writ of certiorari, concluding that the Housing Authority had failed to follow the applicable law because it did not provide Bratcher with adequate notice prior to the Informal Review hearing and because the explanation for upholding the denial of rent assistance offered in the Hearing Officer's written decision was deficient. The circuit court remanded the case to the Housing Authority "to hold an appropriate hearing" on Bratcher's application. The circuit court also defined the scope of the hearing:

> The scope of the hearing should consist of giving [Bratcher] proper notice of the adverse information the government will rely on at the hearing so that she may be prepared to rebut that evidence and make an appropriate argument. At the conclusion of the hearing the Housing Authority should explain its decision as required by [*Billington v. Underwood*, 613 F.2d 91 (5th Cir. 1980)]. As explained in [*Snajder v. State*, 74 Wis. 2d 303, 312–13, 246 N.W.2d 665 (1976),] at the new hearing the Housing Authority is not [] allowed to supplement the record with new evidence . . . [as doing so] violates the concept of "fair play" and "[s]uch a hearing is analogous to allowing a second trial to 'shore up' the record to support the judgment." *Id.* at 313. Therefore, [Bratcher] will be allowed to introduce additional evidence after having received an appropriate notice which will allow her notice of the Housing Authority's adverse information and be prepared to rebut that information. She did not have that opportunity at the first hearing because the notice was not adequate.

---

[4] The circuit court did not consider Bratcher's 42 U.S.C. § 1983 claim at the same time. According to automated circuit court records, the § 1983 claim was subsequently addressed by the circuit court. That claim is not before us on appeal and will not be discussed.

190

Having concluded that a new hearing was necessary due to deficiencies in the notice and decision, the circuit court did not decide whether the Housing Authority's decision was supported by substantial evidence. This appeal follows.

## DISCUSSION

¶ 10. "When we review an application for a writ of certiorari, we review the agency's decision, not the decision of the circuit court." *Williams v. Housing Authority of the City of Milwaukee*, 2010 WI App 14, ¶ 9, 323 Wis. 2d 179, 779 N.W.2d 185 (Ct. App. 2009).

> On certiorari review we, like the circuit court, are limited to determining: (1) whether the agency stayed within its jurisdiction; (2) whether it acted according to law; (3) whether the action was arbitrary, oppressive, or unreasonable and represented the agency's will and not its judgment; and (4) whether the evidence was such that the agency might reasonably make the order or determination in question.

*Williams v. Integrated Cmty. Servs., Inc.*, 2007 WI App 159, ¶ 11, 303 Wis. 2d 697, 736 N.W.2d 226.

¶ 11. We conclude that the Housing Authority failed to act according to law because both the written notice and the written decision failed to give Bratcher an adequate explanation of the reasons her rent assistance was being denied. *See State ex rel. Lomax v. Leik*, 154 Wis. 2d 735, 740, 454 N.W.2d 18 (Ct. App. 1990) ("When used in conjunction with certiorari review, the phrase 'acted according to law' includes the common-law concepts of due process and fair play . . . . [A] hearing [must provide] . . . minimal due process or fair

191

play standards."). Therefore, we affirm the granting of the writ of certiorari. Further, for reasons discussed below, we affirm the circuit court's choice of remedy for these deficiencies.

## I. Adequacy of the written notice and the written decision.

¶ 12. We begin with the federal regulations that govern the federally funded rent assistance program for which Bratcher applied. The applicable regulations provide that when an applicant is denied rent assistance by a participating housing authority (PHA), written notice of the denial is required. *See* 24 C.F.R. § 982.554(a) (2007).[5] Section 982.554(a) provides:

> *Notice to applicant.* The PHA must give an applicant for participation prompt notice of a decision denying assistance to the applicant. *The notice must contain a brief statement of the reasons for the PHA decision.* The notice must also state that the applicant may request an informal review of the decision and must describe how to obtain the informal review.

(Emphasis added.) After an informal review, a decision is issued. The regulations concerning notification of that decision on informal review state: "The PHA must notify the applicant of the PHA final decision after the informal review, *including a brief statement of the reasons for the final decision.*" Sec. 982.554(b)(3) (emphasis added).

¶ 13. In this case, the circuit court concluded that the brief statements of the reasons for the denial of rental assistance provided in the written notice and the written decision were insufficient. Applying the analy-

---

[5] All references to the Code of Federal Regulations (C.F.R.) are to the 2007 version unless otherwise noted.

192

sis used in a similar case issued by this court in *Driver v. Housing Authority of Racine County*, 2006 WI App 42, 289 Wis. 2d 727, 713 N.W.2d 670, we affirm.

¶ 14. In *Driver*, this court considered two 42 U.S.C. § 1983 claims brought against a housing authority by two individuals based on the alleged insufficiency of the written notice and written decision issued in their respective termination-of-housing-benefits cases. *Driver*, 289 Wis. 2d 727, ¶ 1. We concluded that in both cases:

> [b]oth the initial notices and the ultimate decisions, essentially form letters, fell woefully short of the level of specificity that due process requires. Nowhere did these documents specify who had violated what specific obligation and when the violation occurred, and neither gave even a rudimentary description of the incidents giving rise to the charges.

*Id.* (emphasis added). Further, we rejected the trial court's conclusion that the tenants' actual notice of the charges against them negated any deficiencies in the notices. *See id.* We explained:

> "Actual notice" will not suffice. Federal regulations mandate *written* notice, and strict compliance is imperative as a matter of law and public policy. By reading an "actual notice" exception into the regulatory scheme, we would invite housing authorities to dispense with proper notice whenever they determined for themselves that the tenant "must have known" the basis for the allegations against them. Tenants would have no recourse unless they could prove, based on a record that may be sparse or nonexistent, that they did not actually have such notice. Fundamental fairness does not countenance such a result.

*Id.*

¶ 15. The facts in *Driver* are not identical to those here. *Driver* concerned the dismissal of 42 U.S.C. § 1983

claims, rather than a petition for writ of certiorari. Also, the written notices and the written decisions in *Driver* were based on the termination of housing benefits, rather than the application for rent assistance. Nonetheless, the regulations at issue in *Driver* are substantively similar to those at issue here,[6] and we believe the case law underlying *Driver* applies here as well. For these reasons, we rely on *Driver* in reaching our conclusion that the written notice and the written decision were inadequate.

---

[6] The federal regulations at issue in *Driver v. Housing Authority of Racine County*, 2006 WI App 42, 289 Wis. 2d 727, 713 N.W.2d 670, included 24 C.F.R. § 982.555, which provides in relevant part:

(c) Notice to family.

(1) In the cases described in paragraphs (a)(1)(i), (ii) and (iii) of this section, the PHA must notify the family that the family may ask for an explanation of the basis of the PHA determination, and that if the family does not agree with the determination, the family may request an informal hearing on the decision.

(2) In the cases described in paragraphs (a)(1)(iv), (v) and (vi) of this section, the PHA must give the family prompt written notice that the family may request a hearing. The notice must:

(i) *Contain a brief statement of reasons for the decision,*

(ii) State that if the family does not agree with the decision, the family may request an informal hearing on the decision, and

(iii) State the deadline for the family to request an informal hearing.

. . . .

(6) Issuance of decision. The person who conducts the hearing must issue a written decision, *stating briefly the reasons for the decision.* Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing. A copy of the hearing decision shall be furnished promptly to the family.

(Emphasis added.)

¶ 16. In *Driver*, we discussed *Goldberg v. Kelly*, 397 U.S. 254, 267–71 (1970), where "the United States Supreme Court recognized that due process mandates several safeguards prior to the government's termination of welfare benefits." *Driver*, 289 Wis. 2d 727, ¶ 13. *Driver* recognized that after *Goldberg*:

> [i]n order to comply with due process, the individual must be given a meaningful pretermination hearing including the following safeguards:
>
> "(1) timely and adequate notice detailing the reasons for termination; (2) an opportunity to appear personally at the hearing, present evidence and oral arguments and confront and cross-examine adverse witnesses; (3) the right to be represented by counsel; (4) a right to a decision rendered by an impartial decisionmaker; (5) a right to have that decision based solely on rules of law and the evidence presented at the hearing; and (6) a right to a statement by the decisionmaker setting forth the reasons for the decision and the evidence upon which it was based."

*Driver*, 289 Wis. 2d 727, ¶ 13 (quoting *Ferguson v. Metropolitan Dev. & Hous. Agency*, 485 F. Supp. 517, 522 (M.D. Tenn. 1980), which summarized *Goldberg*'s holding) (emphasis omitted). We recognized that these standards apply in Section 8 housing cases and that the relevant federal regulations, including 24 C.F.R. § 982.555, were written "to codify and implement the *Goldberg* standards." *See Driver*, 289 Wis. 2d 727, ¶ 13.

¶ 17. *Driver* analyzed the written notice provided to the tenants. It noted that pursuant to 24 C.F.R. § 982.555(c)(2)(i), "[t]he housing authority must apprise the participant family of the right to a hearing in a 'prompt written notice' that also contains, among other information, 'a brief statement of reasons for the decision.'" *Driver*, 289 Wis. 2d 727, ¶ 14. *Driver* also

discussed two cases that addressed the "elements embodied in such a 'brief statement.' " *Id.*, ¶ 15 (quoting § 982.555(c)(2)(i)).

¶ 18. The first case discussed was *Edgecomb v. Housing Authority of Town of Vernon*, 824 F. Supp. 312 (D. Conn. 1993), where the court recognized that the purpose of the written notice is "to inform the tenant of the allegations so that he can prepare a defense." *See id.* at 314. *Edgecomb* concluded that the written notice must be " 'sufficiently specific . . . to enable [the tenant] to prepare rebuttal evidence to introduce' " at the hearing. *Id.* at 315 (quoting *Billington*, 613 F.2d at 94).

¶ 19. *Driver* also discussed *Billington*, a case involving the denial of an application for a federally subsidized housing project, where the court held that the statement of reasons given to the rejected applicant should include such information as the date, the source and the name and title of the person contacted, so that the applicant can "test the veracity of the agency's findings against him." *See id.*, 613 F.2d at 94. *Billington* concluded that the written notice to the rejected applicant stating "that he had been found ineligible for public housing because his 'previous housing records and habits indicate a detrimental effect on tenants and project environment' " was insufficient. *Id.* at 92 (footnote omitted).

¶ 20. Applying *Goldberg*, *Edgecomb* and *Billington*, *Driver* concluded that the termination notices given to the two tenants were insufficient where they received virtually identical notices that stated: " 'Your eligibility to participate in the Section 8 Rental Assistance Program will terminate . . . for the following reason(s): You violated your family obligation under the Section 8 Rental Assistance Program.' " *See Driver*, 289 Wis. 2d 727, ¶¶ 3, 7 (ellipses added by *Driver*).

¶ 21. *Driver* also considered the adequacy of the written decisions issued in each tenant's case. *See id.*, ¶¶ 5, 10, 17–18. One written decision stated:

"[The Housing Authority] has concluded its review[] of the information you provided and ha[s] found no extenuating circumstances to explain why you were unable to comply with your tenant responsibilities as a recipient of the Section 8 Program . . . . It is the finding of the Authority that you violated your tenant responsibility and . . . your assistance is being terminated."

*Id.*, ¶ 5 (quoting the agency's written decision; first two sets of brackets and ellipses added by *Driver*). The second decision was substantively the same. *See id.*, ¶ 10. *Driver* held that these explanations in the written decisions were insufficient, stating:

Both decision letters from [the Housing Authority] fall appallingly short of the mark. They contain no facts related to the incidents giving rise to the termination decisions and do not mention any specific evidence the hearing officers relied on. Moreover, they do not state the elements of law motivating the court's conclusion. Even if we ignore the absence of any factual background, the letters are deficient for the absence of any legal rationale. They cite no policy, regulation, or other authority indicating what a "family obligation" is or how the [tenants'] acts or omissions fail to meet the pertinent legal requirements.

*Id.*, ¶ 18.

■■

¶ 22. Like the court in *Driver*, we conclude that the written notice and the written decision in this case "fall appallingly short of the mark." *See id.* As noted, the written notice simply stated Bratcher's application was being denied "based on the findings of your background check" and listing the following two reasons: "1. You

were arrested for Battery on 9/14/04 by the Milwaukee Police Department. 2. You were found guilty of Disorderly Conduct on 10/7/03 in Milwaukee Municipal Court, Case No. 03132433." The written decision briefly summarized the testimony concerning the disorderly conduct citation and then concluded: "This is the type of behavior that the Rent Assistance Program tries to screen out."

¶ 23. Both the written notice and the written decision failed to provide Bratcher with a sufficient explanation of the reason her application was being rejected. The written notice failed to provide any details about the arrest and forfeiture, and did not even attempt to explain the legal significance of those events to an application for rent assistance. The written decision included more facts, but, like the written notice, it failed to explain how those facts constitute a basis for denial of rent assistance.

¶ 24. According to the Housing Authority,[7] the basis for denying Bratcher's application is 24 C.F.R.

---

[7] Specifically, in support of its argument that the Hearing Officer's decision is supported by substantial evidence, the Housing Authority argues:

[T]he federal and local housing regulations permit the Housing Authority to deny rent assistance to applicants who engage in the type of conduct Bratcher admitted engaging in . . . .

Bratcher's admitted conduct which resulted in her citation for disorderly conduct meets the definition of "violent criminal activity" or otherwise constitutes criminal activity that poses a threat to the health, safety, or peaceful enjoyment of those with whom she would share the premises. Under federal housing regulations, "violent criminal activity" "means any criminal activity that has as one of its elements the use, attempted use, or threatened use of physical force substantial enough to cause, or be reasonably likely to cause, serious bodily injury or property damage." Disorderly conduct meets the regulations' definition of "violent criminal

§ 982.553(a)(2)(ii), which provides that a housing authority may properly deny admission to its rent assistance program to an individual who has engaged in either "[v]iolent criminal activity" or "[o]ther criminal activity which may threaten the health, safety, or right to peaceful enjoyment of the premises by other residents or persons residing in the immediate vicinity." And yet, neither the written notice nor the written decision mentioned the applicable federal regulations or made any reference to "[v]iolent criminal activity" or threatening health, safety and peaceful enjoyment. Further, neither even attempted to explain how actions leading only to an arrest and a civil forfeiture (rather than a criminal conviction) constitute "criminal activity," much less "[v]iolent criminal activity." *See id.*

¶ 25. Instead, the written decision informed Bratcher that she engaged in "the type of behavior that the Rent Assistance Program tries to screen out." The applicable federal regulations do not recognize that as a basis for denying rent assistance. An applicant who was

---

activity" because disorderly conduct, as a Class B misdemeanor, is criminal activity under Wisconsin law and one of its elements is violent conduct . . . .

Bratcher testified that she slammed her hands against [the neighbor's] door. That is violent conduct by physical force. Accordingly, Bratcher's admission satisfies the initial portion of the federal and local housing regulations' definition of "violent criminal activity"—i.e. her admission encompassed criminal activity (disorderly conduct) that has as one of its elements use of physical force. Her conduct also satisfies the remaining portion of the definition of "violent criminal activity," because the physical force she admitted to—slamming her hands against a door—could have caused property damage. Accordingly, Bratcher's admitted conduct satisfies the federal and local housing regulations' definition of "violent criminal activity," for which the Housing Authority was permitted to deny her application for rent assistance.

(Footnote, citations, record citations and emphasis omitted.)

given that reason for the denial would have no idea which rules were violated. Indeed, even if we assume the Hearing Officer was relying on 24 C.F.R. § 982.553(a)(2)(ii), we do not know if she determined that Bratcher engaged in "[v]iolent criminal activity" or, instead, "criminal activity which may threaten the health, safety, or right to peaceful enjoyment." *See id.*

¶ 26. In defense of the reasons offered in the written notice and the written decision, the Housing Authority asserts that "no regulation or case requires the Housing Authority to identify in its initial notice of denial the specific regulation it deems the applicant to have violated." The Housing Authority continues: "Likewise, although case law requires the Housing Authority to provide timely and accurate notice of the reasons for the initial denial that enables the applicant to prepare a defense, case law decidedly *does not* require the Housing Authority to identify the specific regulation violated."

¶ 27. We need not decide whether a written notice or written decision must identify the precise regulation that forms the basis for the applicant's rejection, because under established case law, the Housing Authority was required to adequately explain its rationale, and it failed to do so. As in *Driver*, neither the written notice nor the written decision "state the elements of law motivating" the Hearing Officer's decision. *See id.*, 289 Wis. 2d 727, ¶ 18. Similarly, neither identifies the "policy, regulation, or other authority indicating" why the disorderly conduct forfeiture or the facts of that incident constitute a legal standard that justifies denial of rent assistance. *See id.* These deficiencies render the written notice and written decision inadequate. While *Goldberg* does not require a final written decision to contain "a full opinion or even formal findings of fact

and conclusions of law," it does require a decision maker to adequately state the reasons for the determination and the evidence relied on. *See id.*, 397 U.S. at 271. In this case, the reasons given in the written decision—as well as in the written notice—lacked sufficient explanation.

¶ 28. For the foregoing reasons, we conclude that the written notice and written decision were inadequate. By failing to provide adequate "brief statement[s] of the reasons" for denying benefits in both the written notice and the written decision, the Housing Authority failed to follow 24 C.F.R. § 982.554(a) and (b), and thereby failed to "act[] according to law." *See Integrated Cmty. Servs.*, 303 Wis. 2d 697, ¶ 11 (whether housing authority correctly construed federal regulations concerning denial of admission to housing program implicated second basis for certiorari review: whether authority acted according to law).

## II. Remedy.

¶ 29. Like the circuit court, we have concluded that a writ of certiorari was properly granted. The next issue is the appropriate remedy. In this case, the circuit court determined that the remedy was to give Bratcher a new hearing with proper notice and to require the Housing Authority to explain its decision consistent with the principles outlined in *Billington*. *See Umhoefer v. Police & Fire Com m 'n of the City of Mequon*, 2002 WI App 217, ¶¶ 21–22, 257 Wis. 2d 539, 652 N.W.2d 412 (court sitting in certiorari review now has authority to permit a remand for limited purposes, and rehearing was appropriate where ex-wife was erroneously allowed to invoke marital privilege at employee's termination hearing). The circuit court also ordered that the Housing Authority not be allowed to supplement the record

with new evidence, relying on *Snajder*, 74 Wis. 2d at 312–13.[8]

¶ 30. Because the circuit court determined that a new hearing was appropriate, it did not consider Bratcher's argument that there was insufficient evidence to support the Hearing Officer's decision. However, the Housing Authority presented that argument in support of its request that we reverse the writ of certiorari and uphold the Housing Authority decision denying Bratcher rent assistance. In response, Bratcher argued that there was insufficient evidence to support the decision and asserted that we should reverse the Housing Authority's decision to deny rent assistance to Bratcher.

¶ 31. We decline to address the issue concerning sufficiency of the evidence or to disturb the circuit court's selection of a remedy.[9] We have concluded that

---

[8] In *Snajder v. State*, 74 Wis. 2d 303, 246 N.W.2d 665 (1976), the Wisconsin Supreme Court held that a circuit court granting a writ of certiorari could remand the parole revocation case to the department of corrections for a determination of whether parole revocation would be appropriate based on one of two previously identified parole violations. *See id.* at 312. However, *Snajder* held that the circuit court erred when it "also ordered a second hearing where the record could be supplemented by additional evidence" from the department. *Id.* The court explained:

> The concept of due process and fair play applies to parole revocation procedures. A remand which directs or permits supplementing the record by additional evidence violates this concept. Such a second hearing is analogous to allowing a second trial to "shore up" the record to support the judgment.

*Id.* at 313 (citation omitted).

[9] Because we do not address the sufficiency of the evidence, we do not address the parties' arguments concerning reliance on

the lack of a sufficient written notice and written decision justified the circuit court's issuance of a writ of certiorari. The Housing Authority did not challenge the remedy selected by the circuit court; it appealed only the issue of whether a writ of certiorari was appropriately granted. Bratcher did not cross-appeal. Therefore, we reject her attempt to fashion a more favorable remedy: outright reversal of the denial of rent assistance. *See State v. Huff*, 123 Wis. 2d 397, 407–08, 367 N.W.2d 226 (Ct. App. 1985) ("A respondent may raise an issue in his brief without filing a cross-appeal 'when all that is sought is the raising of an error which, if corrected, would sustain the judgment,' " but if instead the respondent "seeks modification of an order entered in a proceeding from which the appellant appealed, the respondent must file a notice of cross-appeal.") (citation omitted). Similarly, the Housing Authority has not challenged the limits placed on the rehearing by the circuit court. Therefore, we simply affirm the circuit court's order remanding the case to the Housing Authority so that the Housing Authority can proceed as outlined in the circuit court's decision.

*By the Court.*—Order affirmed.

¶ 32. FINE, J. (*dissenting*). Families living in public housing have a right to live in peace, undisturbed by noisy, inconsiderate, out-of-control neighbors who, in the past, and perhaps even today despite the screening of potential residents, still plague those who are too

uncorroborated hearsay evidence. However, we note that this issue was recently decided in *Williams v. Housing Authority of the City of Milwaukee*, 2010 WI App 14, ¶ 13, 323 Wis. 2d 179, 779 N.W.2d 185 (Ct. App. 2009) (applying *Gehin v. Wisconsin Group Insurance Board*, 2005 WI 16, 278 Wis. 2d 111, 692 N.W.2d 572, and concluding that housing authority "could not base its decision solely on uncorroborated hearsay evidence").

poor to live in more tranquil and secure environments. I respectfully disagree with the Majority's conclusion that the notice and decision here were fatally deficient.

¶ 33. As the Majority notes, Leverna Bratcher was told that the agency was denying her application to participate in the Rent Assistance Program because, as material here (given the agency's ultimate basis for the denial), "[y]ou were found guilty of Disorderly Conduct on 10/7/03 in Milwaukee Municipal Court, Case No. 03132433." How can that be more specific?

¶ 34. Further, as the Majority recounts, Bratcher fully explained her version of the events that led to her conviction. The agency concluded that this was not the type of conduct that warranted entry into the Program, given the need to protect other residents from neighbors who are quick to fly off the handle and disturb the peace and tranquility to which all public-housing residents are entitled. The agency's decision fully explains why:

> It is understandable that [Bratcher] was upset about her daughter; however, by the time she got home, the fight was over, the police were there and she could see her daughter was unhurt. While in the presence of police, applicant made threats, uttered profanities, banged on the door and caused a crowd to gather. The incident also happened near her residence and involved a neighbor.

"This," the agency concluded, "is the type of behavior that the Rent Assistance Program tries to screen out." Nothing could be more clear.

¶ 35. Recognizing the limited scope of our certiorari-review, the Majority asserts that the agency's notice and decision violated the law, and relies on the distillation of other authority by *Driver v. Housing*

*Authority of Racine County*, 2006 WI App 42, 289 Wis. 2d 727, 713 N.W.2d 670. But this is *not* a *Driver* situation. There, the agency used a *general* written form that *did not* refer to the specific facts upon which the denial was based. *Id.*, 2006 WI App 42, ¶¶ 3–6, 289 Wis. 2d at 733–735, 713 N.W.2d at 673–674. Rather, the agency's written "notice" was merely conclusory: " 'You violated your family obligation under the Section 8 Rental Assistance Program,' " *id.*, 2006 WI App 42, ¶ 3, 289 Wis. 2d at 733, 713 N.W.2d at 673, as was its written decision, which also merely noted that the agency had concluded that Driver " 'violated [her] tenant responsibility,' " *id.*, 2006 WI App 42, ¶ 5, 289 Wis. 2d at 734, 713 N.W.2d at 674.[1] As we see, the notice and decision here are not similarly infirm. Accordingly, I respectfully dissent.

[1] The companion case decided by *Driver v. Housing Authority of Racine County*, 2006 WI App 42, 289 Wis. 2d 727, 713 N.W.2d 670, involving Dorothy Bizzle was substantially the same. *Id.*, 2006 WI App 42, ¶¶ 7, 10, 289 Wis. 2d at 735, 736, 713 N.W.2d at 674, 675.