COURT OF APPEALS
DECISION
DATED AND FILED

February 2, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP1862**

**STATE OF WISCONSIN**

Cir. Ct. No.  2021CV1021

**IN COURT OF APPEALS
DISTRICT IV**

GREGORY A. THOMPSON,

   PETITIONER-APPELLANT,

V.

DANE COUNTY LAND CONSERVATION COMMITTEE
AND DANE COUNTY,

   RESPONDENTS-RESPONDENTS.

APPEAL from an order of the circuit court for Dane County: VALERIE BAILEY-RIHN, Judge. *Affirmed in part; reversed in part and cause remanded with directions*.

Before Blanchard, P.J., Graham, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Gregory Thompson appeals a circuit court order remanding this matter to the Dane County Land Conservation Committee ("the LCC") for the LCC to explain its reasoning with respect to one of the issues that Thompson raised before the LCC, and to consider and decide an issue that Thompson raised before the LCC but that the LCC did not consider.  We affirm in part and reverse in part.

## BACKGROUND

¶2    Thompson owns property ("the property") near the intersection of Burke and Reiner Roads in the Town of Burke, in Dane County.  The property is located in a "shoreland" zone.[1]

¶3    In March 2020, Thompson hired a company to remove trees, through a mulching process, that were growing on the property.  Shortly after Thompson completed this project, Jess Starks, an erosion control specialist with the Dane County Land and Water Resources Department ("the Department"), conducted an inspection of the property and determined that Thompson's project had resulted in "land disturbing activity."[2]

---

[1]  "Shoreland" is defined in pertinent part as:  "[a]ll lands within … 300 feet of the ordinary highwater mark of any navigable river or stream …."  DANE COUNTY, WIS., ORDINANCE § 11.015(37)(a)2. (2017).  It is not disputed that the property was in a shoreland zone.

Chapter 11 of the Dane County Ordinances was last revised on January 31, 2017.  All references to chapter 11 are to the 2017 version.

[2]  "Land disturbing activity" is defined in the Dane County Ordinances as:

> [a]ny alteration or disturbance that may result in soil erosion, sedimentation, or change in runoff[,] including, but not limited to, removal of ground cover, grading, excavating, or filling of land. Tillage of existing agricultural fields is not considered a land disturbing activity, provided it is done in conformance with a site-

2

¶4 As a result, Starks emailed Thompson, attaching a Notice of Violation ("the Notice") and a Stop Work Order. The Notice stated that Thompson had "created land disturbance by grading within 300 feet of a navigable stream" without a shoreland erosion control permit, in violation of DANE COUNTY, WIS., ORDINANCE § 11.05(3)(a)1. The Notice directed Thompson to submit, by a specified date, an after-the-fact shoreland erosion control permit application and related materials, including an erosion control plan stamped by a professional engineer, and to submit "double fees" for his failure to obtain the permit prior to beginning work on the project. *See* DANE COUNTY, WIS., ORDINANCES §§ 11.05(3)(a), (4)(c)14.; 11.50(7).[3]

¶5 Thompson responded to Starks the same day, stating that he did not grade the property and that "[a]ll [he] did was get rid of the trees." He explained that the company he had hired used a machine that "chips" the trees in place, leaving an area of the property that was "full of mulch." Thompson conceded that there may be "some machine tracks that may have roughed up the soil[,]" particularly where the ground was wet, and that he could "throw some seed" on those areas. Starks replied, stating that Thompson's activity triggers the permit requirement.

---

specific farm conservation plan approved by the Director [of the Department].

DANE COUNTY, WIS., ORDINANCE 11.015(19).

[3] The Notice also informed Thompson that he was required to submit an after-the-fact stormwater management permit application pursuant to Chapter 14 of the Dane County Ordinances. Thompson was also ultimately cited for a violation of DANE COUNTY, WIS., ORDINANCE § 14.45(1) (2019), which requires obtaining an erosion control permit for "[l]and disturbing activity in excess of 4,000 square feet." (This provision was revised and renumbered to DANE COUNTY, WIS., ORDINANCE § 14.06(1) (2021) after issuance of the Department's citation; however, the pertinent language has not changed.) Because neither the circuit court nor the parties on appeal discuss the Chapter 14 violation, we likewise do not address it.

When Thompson inquired about the legal basis for a permit, Starks cited the applicable ordinances and provided the following explanation:

> Basically, any activity that creates bare soil (including incidental due to tires) in the shoreland zone qualifies for a permit. Even one square foot. This entire lot is within the shoreland zone, so any disturbance, whether accidental or not, requires a permit. This includes grubbing stumps or pulling trees.

¶6 Thompson then sent photographs to Starks and requested that she meet him at the property for a site visit. He stated that he had visited the property and found "that there is no bare ground and that as expected the trees were simply mulched" and that the "entire site is covered with 2-3 inches of mulch." In response, Starks stated that the Department was not "meeting with folks on site at this time" and that she and a supervisor, Jeremy Balousek, had reviewed the photos and concluded that "there is undeniably disturbed soil on this site, [which] creates the need for an after-the-fact shoreland erosion control permit." She stated that "there is no grey area" and reiterated the Department's position that Thompson needed to file a permit application by the previously stated deadline.

¶7 A few days later, Thompson submitted a "simplified" erosion control permit application and checklist pursuant to DANE COUNTY, WIS., ORDINANCE § 11.05(2)(b). Under this provision, the Department may "waive requirements for an engineer's stamp and allow for the use of a simplified erosion control checklist" if, among other criteria, the "[t]otal area of soil disturbance will not exceed 1,000 square feet." Sec. 11.05(2)(b)5. Starks informed Thompson that the simplified permit application was insufficient and required him to submit the application required in the Notice. Thompson did not submit the requested application and was issued a citation for a violation of § 11.05(3)(a). On May 22, 2020, Thompson filed

4

an appeal with the LCC pursuant to DANE COUNTY, WIS., ORDINANCE § 11.99(4)(a).

¶8 The LCC held a hearing on Thompson's appeal ("the evidentiary hearing"). Starks did not testify at the evidentiary hearing and the record does not indicate that her inspection report was submitted as evidence. Balousek testified, stating that he believed it was the tire tracks left in the soil from the machinery used for Thompson's project—and not the tree mulching itself—that was deemed land-disturbing activity. The LCC issued a decision upholding the Department's determination that Thompson's project constituted land-disturbing activity that required the shoreland erosion control permit requested by the Department. The decision did not specify what constituted the land-disturbing activity—whether it was the creation of tire tracks in the soil, the tree mulching, or some combination of the two. Thompson subsequently filed a petition for a writ of certiorari in Dane County Circuit Court seeking judicial review of the LCC's decision.

¶9 On February 24, 2021, Dane County Circuit Court Judge David Conway issued a decision remanding the matter to the LCC for further proceedings for two reasons: (1) the LCC did not adequately explain its grounds for upholding the determination that land-disturbing activity had taken place; and (2) the LCC did not address Thompson's alternative argument that, even if the project constituted land-disturbing activity, the disturbed area did not exceed 1,000 square feet and Thompson was therefore entitled to the simplified permit application he had submitted rather than the full-scale permit application required by the Department for land-disturbing activity exceeding 2,000 square feet. In remanding the case to the LCC, Judge Conway prohibited the LCC from supplementing the administrative record with new evidence.

¶10     Following Judge Conway's decision, the LCC held a second hearing on remand ("the remand hearing"). At the remand hearing, corporation counsel advised the LCC regarding Judge Conway's decision, noting that "nothing outside the record" would be permitted at the hearing. Prior to the remand hearing, the Department had submitted to the LCC proposed Findings of Fact and Conclusions of Law ("Proposed Findings"). The LCC chairperson stated that the LCC would go through the Proposed Findings point by point. Thompson objected to the Proposed Findings and argued that the document was a supplementation to the record, in violation of Judge Conway's order. The chairperson noted Thompson's objection and proceeded to lead the LCC through its discussion of the Proposed Findings, which the LCC ultimately adopted.[4]

¶11     The LCC issued a written decision, concluding that Thompson "engaged in land disturbing activity requiring a shoreland erosion permit" and that "the land disturbance exceeded the 2,000 square feet necessary to require a shoreland erosion control permit as required by [the Department]."

¶12     Thompson filed a second certiorari action in the circuit court, challenging the LCC's final decision. Thompson argued that: (1) the LCC improperly considered the Proposed Findings, in violation of Judge Conway's order and Thompson's due process rights; (2) the LCC again failed to explain its basis for concluding that Thompson's project constituted land-disturbing activity; and (3) the evidence was insufficient to support the LCC's conclusion that the area of any land-

---

[4] The LCC's subsequent written decision states that "the LCC voted unanimously to adopt the [Department's] findings of fact" and to deny Thompson's appeal. However, although the chairperson moved to adopt the Proposed Findings at the remand hearing and the motion was seconded, the record reflects that there was no subsequent vote by the LCC to actually adopt them. Despite the absence of a vote, Thompson does not dispute on appeal that the LCC adopted the Proposed Findings, which are incorporated into its final decision.

disturbing activity exceeds the square-footage requirement that would trigger the full-scale permitting process required by the Department.

¶13 Dane County Circuit Court Judge Valerie Bailey-Rihn issued a written decision that again remanded the case to the LCC. The court rejected Thompson's argument that the LCC improperly considered the Department's Proposed Findings, but concluded that "the LCC denied [Thompson] due process when it failed, for a second time, to adequately explain the reasons for rejecting his appeal." The court required the LCC to "'sufficiently articulat[e] its reasons for upholding the Department's finding of 'land disturbing activity' without supplementing the record.'" The court did not specifically address Thompson's argument that the evidence related to square footage was insufficient, and instead appears to have construed Thompson as arguing that the LCC did not adequately explain its rationale on either its land-disturbing or its square-footage determinations.[5] Quoting Judge Conway's prior decision, Judge Bailey-Rihn required the LCC to "'deliberat[e] and vot[e] upon whether the Department correctly found that [Thompson's] soil disturbance exceeded the requisite square footage to trigger a full-scale permit application'" based on the existing record and to "'clearly state its rationale.'" Like Judge Conway, Judge Bailey-Rihn "'expresse[d] no view on whether the record evidence is sufficient to support any

---

[5] Judge Bailey-Rihn characterized Thompson's arguments as follows: "First, that the LCC gave itself a chance to 'shore up the record' when it considered the Proposed Findings on remand. Second, that even if the LCC properly considered the Proposed Findings, the Final Decision still failed to explain why Thompson had engaged in land disturbing activity of a sufficiently large area." At another point, the court summarized what the court described as Thompson's "second argument" as follows: "Thompson's second argument is that the LCC acted arbitrarily when it failed to explain the reasons why mulching trees constitutes land disturbing activity on an area exceeding 2,000 sq. ft."

particular outcome on these issues.'" Thompson appeals this second certiorari order remanding the case to the LCC.

## DISCUSSION

### *I. Standards Governing Certiorari Review*

¶14    On appeal from a judgment issued by a circuit court on certiorari, we review the actions of the LCC, not the court. *See* ***State ex. rel. Anderson v. Town of Newbold***, 2019 WI App 59, ¶7, 389 Wis. 2d 309, 935 N.W.2d 856. "The purpose of certiorari judicial review of municipal and administrative decisions is to ensure procedural due process." ***Hartland Sportsmen's Club, Inc. v. City of Delafield***, 2020 WI App 44, ¶12, 393 Wis. 2d 496, 947 N.W.2d 214. In "conducting common law certiorari review, a court reviews the record compiled by the municipality and does not take any additional evidence on the merits of the decision." ***Ottman v. Town of Primrose***, 2011 WI 18, ¶35, 332 Wis. 2d 3, 796 N.W.2d 411. The court's review is limited to the following four inquiries:

> (1) whether the municipality kept within its jurisdiction;
> (2) whether it proceeded on a correct theory of law;
> (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the order or determination in question.

***Id.***

¶15    A certiorari court has three options for resolving a certiorari action: "affirm, reverse, or remand for further proceedings consistent with the court's decision." ***Hartland***, 393 Wis. 2d 496, ¶12. "Remand to the municipality or administrative tribunal for further hearings is appropriate where (1) the defect in the proceedings is one that can be cured, but (2) supplementation of the record by the government decision maker with new evidence or to assert new grounds is not

permitted." *Id.*, ¶14 (emphasis omitted). Furthermore, "'[o]utright reversal is appropriate when the due process violation cannot be cured on remand,' which includes cases in which the evidence failed to support the government's decision." *Id.* (alteration in original) (quoting *Guerrero v. City of Kenosha Hous. Auth.*, 2011 WI App 138, ¶12 n.5, 337 Wis. 2d 484, 805 N.W.2d 127).

## II. *Proposed Findings*

¶16 Thompson first argues that, by considering the Proposed Findings at the remand hearing, the LCC violated Judge Conway's remand order prohibiting the LCC from supplementing the record with new evidence. He argues that such consideration also violated his right to due process by allowing the Department to improperly "shore up" its case, and that reversal on all issues is therefore warranted. *See Hartland*, 393 Wis. 2d 496, ¶¶14-16 ("Affording a government decision maker a 'second kick at the cat' on remand by supplementing the record with new evidence or new allegations violates the standards of due process and fair play" and is "'analogous to allowing a second trial to 'shore up' the record to support the judgment.'" (quoted source omitted)).

¶17 We conclude that the LCC's consideration of the Proposed Findings violated neither Judge Conway's remand order nor Thompson's due process rights. The Proposed Findings were not "new evidence" supplementing the record as prohibited by *Hartland*; rather, they purported to summarize evidence that was already in the record. In fact, the LCC's use of the Proposed Findings appears to have been an attempt to comply with Judge Conway's remand order directing the LCC to "sufficiently articulat[e] its reasons" for its decision, preferably, by "stat[ing] its rationale in a written decision, approved by all supporting members, rather than by on-record statements." We note that both the LCC chairperson and

corporation counsel repeatedly emphasized during the remand hearing that supplementation of the record with new evidence was not permitted. Corporation counsel also made clear that the Proposed Findings were just that: proposed. The role of the LCC was to determine whether the Proposed Findings were supported by the evidence of record and whether they should be adopted, rejected, or modified.

¶18    Thompson argues that the Proposed Findings are supplemental evidence because some of the findings are not supported by evidence in the record. But whether the findings are supported by the evidence is an issue separate from whether the Proposed Findings constitute new evidence: lack of support in the record does not make the Proposed Findings themselves evidence.

¶19    Thompson advances no authority or persuasive argument for the proposition that the Proposed Findings document itself constitutes supplemental evidence. Because we conclude that the Proposed Findings document is not new evidence, we further conclude that its consideration by the LCC did not violate Judge Conway's order or Thompson's due process rights.

¶20    Finally, to the extent Thompson suggests that he was not provided with notice of the Proposed Findings and did not have an opportunity to respond, the record belies such claims. As noted at the remand hearing, the Proposed Findings were incorporated into the agenda. The agenda was publicly noticed earlier that week and Thompson admitted at the hearing to being "fully aware" of it. Thompson was free to submit his own proposed findings prior to the hearing but did not do so. Further, during the remand hearing he was specifically informed by corporation counsel that, like the LCC, he could refute the Department's Proposed Findings or propose his own findings based on the existing record. Indeed, Thompson did in fact avail himself of the opportunity to challenge the Proposed

Findings, disputing various findings proposed, including those related to square footage.

¶21 In sum, we agree with Judge Bailey-Rihn that the LCC's consideration of the Department's Proposed Findings did not violate Judge Conway's order or Thompson's right to due process.

### III. Square Footage

¶22 Under Chapter 11 of the Dane County Ordinances, with certain exceptions not pertinent here, a shoreland erosion control permit is required for land-disturbing activity of any size in a shoreland zone. *See* DANE COUNTY, WIS., ORDINANCES §§ 11.05(3)(a)1., 11.015(37)(a)2. There are three tiers of permit applications for land-disturbing activity in a shoreland zone, depending in part on the square footage of the land disturbance. The highest tier, for land-disturbing activity exceeding 2,000 square feet, is the tier that the Department determined was applicable to Thompson's project. *See* § 11.05(4)(c). This tier requires the property owner to submit with the permit application a number of application materials, including an erosion control plan stamped by a professional engineer. *See **id.*** The mid-tier permit waives the requirements for an engineer's stamp if the "[s]oil disturbance will not exceed 2,000 square feet." Sec. 11.05(2)(c)4. As previously mentioned, the lowest tier, which is the least costly, allows for a simplified erosion checklist and waiver of the engineer's stamp if the "[t]otal area of soil disturbance will not exceed 1,000 square feet." Sec. 11.05(2)(b). Thompson argues that, even if his project involved land-disturbing activity, he is entitled to this lowest tier permitting process because the evidence does not show that the alleged land-disturbing activity exceeded 1,000 square feet, which necessarily meant that it did not exceed the 2,000 square feet determined by the LCC.

¶23     As a preliminary matter, Thompson correctly notes that he separately argued to Judge Bailey-Rihn that there was insufficient evidence to conclude that any area allegedly disturbed exceeded 1,000 square feet.  He points out that the court, in Thompson's words, "lumped" the square-footage issue together with his argument that the LCC failed to explain why his project constituted land-disturbing activity.  As noted in the background section above, we agree that Judge Bailey-Rihn did not address Thompson's argument that there was *insufficient evidence* to support the LCC's square-footage determination, even though Thompson raised the evidence-sufficiency issue with the court in the second certiorari action.[6]  Instead, the court construed Thompson's argument to be that the LCC did *not adequately explain* its rationale for determining that the square footage was in excess of 2,000 square feet, and the court remanded this issue to the LCC to determine the square-footage issue.  However, Thompson's argument was not that the LCC failed to explain its rationale regarding its square-footage determination, but rather that the evidence did not support the LCC's conclusion that the area of any land disturbance exceeded 1,000 square feet.  Moreover, contrary to the court's suggestion, the LCC's final decision did in fact contain its rationale for determining the square-footage issue.  The question in the second certiorari proceeding, and now on appeal, is whether the record evidence supports that determination.

¶24     Significantly, despite Thompson's thorough explanation in his appellate brief as to why he believes the evidence regarding square footage is

---

[6] Indeed, Thompson has raised this issue throughout the entirety of these proceedings:  at both the evidentiary and remand hearings before the LCC and during both his first and second certiorari actions in circuit court.

insufficient, the County[7] makes no argument that the evidence is in fact sufficient. Instead, the County's only argument on this point is that this court should decline to consider Thompson's argument regarding the sufficiency of the evidence.[8]  In support, the County relies on *Bratcher v. Housing Authority of Milwaukee*, 2010 WI App 97, 327 Wis. 2d 183, 787 N.W.2d 418.  However, *Bratcher* lends no support to the County's assertion that we should decline to consider an argument that Thompson raised in his second certiorari petition and renews on appeal.

¶25    In *Bratcher*, the Housing Authority denied Bratcher's application for rental assistance and then upheld that decision in an informal review hearing.  The circuit court granted Bratcher's writ of certiorari, concluding that the Housing Authority did not provide Bratcher with adequate notice prior to the informal review hearing and that "the explanation for upholding the denial of rent assistance offered in the Hearing Officer's written decision was deficient." *Id.*, ¶9.  The Housing Authority appealed and this court affirmed the circuit court, concluding that the "written notice and the written decision in [the] case '[fell] appallingly short of the mark.'" *Id.*, ¶22 (quoting *Driver v. Housing Auth. of Racine Cnty.*, 2006 WI App 42, 289 Wis. 2d 727, 713 N.W.2d 670).  We also affirmed the circuit court's order remanding the case to the Housing Authority to give Bratcher a new hearing and to explain its decision, without supplementing the record with new evidence. *Bratcher*, 327 Wis. 2d 183, ¶29.  In doing so, we declined to address Bratcher's

---

[7] The respondents in this appeal are the LCC and Dane County.  For ease of reference, we refer to the respondents as "the County."

[8] In the section of its brief discussing the separate issue of whether the LCC impermissibly considered the Proposed Findings, the County also states in a conclusory manner, "It is the County's position that all of the proposed findings are supported by the evidence in the record of the 2020 LCC hearing" (i.e., the evidentiary hearing).  The County does not assert, much less develop, an argument that responds to Thompson's specific argument that the evidence regarding square footage is insufficient.

argument that there was insufficient evidence to support the denial of rental assistance and that the proper remedy was an outright reversal. *See id.*, ¶¶30, 31.

¶26 The situation in *Bratcher* is not analogous to the situation in this case. In *Bratcher*, we declined to consider Bratcher's argument on the sufficiency of the evidence because neither party challenged the remedy of remand selected by the circuit court, and more specifically, because Bratcher "did not cross-appeal." *See id.*, ¶31. We therefore "reject[ed] [Bratcher's] attempt to fashion a more favorable remedy: outright reversal of the denial of rent assistance" to challenge the remedy selected by the circuit court. *Id.* Here, in contrast, Thompson is the appellant and explicitly argues for reversal, rather than remand, on this issue. Accordingly, *Bratcher* does not preclude this court from considering Thompson's argument that the evidence is insufficient to support the LCC's square-footage determination.

¶27 Because we have rejected the County's argument based on *Bratcher*, and the County does not offer any response to Thompson's specific argument that the evidence is insufficient, we conclude that the County has conceded the sufficiency of the evidence issue. *See Schlieper v. DNR*, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) ("respondents cannot complain if propositions of appellants are taken as confessed which respondents do not undertake to refute"). Thus, reversal of the LCC's determination on this issue is required. *See Hartland*, 393 Wis. 2d 496, ¶14 (reversal is appropriate in cases where the evidence fails to support the government's decision). The County has not directed us to evidence that could be sufficient that was adduced at the evidentiary hearing, despite Thompson's consistent position that the evidence is insufficient. The effect of our ruling based on the County's implicit concession regarding the square-footage issue is that the most the Department could have required of Thompson is the simplified

14

erosion control permit application and checklist found in DANE COUNTY, WIS., ORDINANCE § 11.05(2)(b), which Thompson submitted after the fact.

### IV. Remand on Issue of Land-Disturbing Activity

¶28    As previously noted, Judge Bailey-Rihn remanded this matter to the LCC for the LCC to explain its reasoning for concluding that Thompson's project resulted in land-disturbing activity.  On appeal, Thompson does not argue (as he does with respect to the square-footage issue) that the evidence is insufficient to support the LCC's determination that land-disturbing activity occurred.  Rather, his only argument is that a second remand to cure the defect that should have been corrected by the LCC at the remand hearing "prejudices" him and "would violate his due process right to a fair review."  Thompson argues that he has "spent time, money and substantial effort to bring the first certiorari action only to have the LCC be so non-responsive to [the] court's specific instruction, that a second certiorari review was necessary for the same issue."  He contends that "[a]nother certiorari review to enforce the previous certiorari order is not normal, expected, or procedurally fair" and that "reversal is the only remedy."

¶29    Thomson's frustration is understandable.  But we must nevertheless reject his argument that reversal is required because he provides no authority that supports this position.  *See **State v. Pettit***, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (undeveloped legal arguments and "[a]rguments unsupported by references to legal authority will not be considered").  Thompson quotes ***Hartland***, 393 Wis. 2d 496, ¶22, for the proposition that the LCC should not be allowed a "second kick at the cat."  However, as previously noted, ***Hartland*** prohibited supplementing the record on remand with new evidence or new allegations.  *See **id.***, ¶16 ("Affording a government decision maker a 'second kick

at the cat' on remand *by supplementing the record with new evidence or new allegations* violates the standards of due process and fair play." (emphasis added)). Here, Judge Bailey-Rihn, echoing the position taken by Judge Conway, made clear that on remand, the record should not be supplemented with additional evidence or arguments. Thus, ***Hartland*** does not prohibit the remedy ordered by Judge Bailey-Rihn.

¶30 Because we reject the only argument Thompson advances with respect to the allegedly land-disturbing activity issue, we affirm Judge Bailey-Rihn's order remanding the matter to the LCC to explain its rationale for determining that Thompson caused land-disturbing activity. In doing so, we further observe that, while Thompson has prevailed on the square-footage issue, remand to the LCC is nevertheless appropriate for the LCC to explain its decision as to whether Thompson caused land-disturbing activity on any amount of the property. Although our determination on the square-footage issue means that Thompson would be entitled to a simplified erosion control permitting process for any land-disturbing activity, if it is ultimately determined that he did not cause such activity, he presumably did not need to apply for any permit.

## CONCLUSION

¶31 For the foregoing reasons, we remand this matter to the circuit court with directions to enter an order consistent with this opinion. In this order, the circuit court should remand the matter to the LCC for the LCC to issue a decision that: (1) explains its reasoning, based on the evidence presented at the evidentiary hearing, for concluding that land-disturbing activity occurred; and (2) concludes,

based on the County's concession, that any land-disturbing activity did not exceed 1,000 square feet.[9]

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).

---

[9] We make two observations about possible next steps in this matter. First, on remand to the LCC, the LCC is free to revisit its conclusion that any land-disturbing activity occurred. Second, and in the alternative, if Thompson is satisfied with the result of this court's ruling on the square-footage issue—namely, that if there was land-disturbing activity he is entitled to rely on the simplified permit application—he may decide to forego his argument that no land-disturbing activity occurred.